IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 31840

| | |
|---|---|
| IN THE MATTER OF THE SUSPENSION OF THE DRIVER'S LICENSE OF MARVIN GIBBAR. | ) ) ) |
| STATE OF IDAHO, DEPARTMENT OF TRANSPORTATION, | ) ) |
| Plaintiff-Respondent, | ) ) |
| v. | ) ) |
| MARVIN GIBBAR, | ) ) |
| Defendant-Appellant. | ) ) ) |

2006 Opinion No. 78

Filed: November 14, 2006

Stephen W. Kenyon, Clerk

Appeal from the District Court of the Second Judicial District, State of Idaho, Clearwater County. Hon. John H. Bradbury, District Judge.

Decision of the district court, affirming an administrative order suspending driver's license after failing a blood alcohol concentration test, <u>affirmed</u>.

Clark & Feeney, Lewiston, for appellant. Charles Stroschein argued.

Hon. Lawrence G. Wasden, Attorney General; Edwin L. Litteneker, Special Deputy Attorney General, Lewiston, for respondent. Edwin L. Litteneker argued.

_____

PERRY, Chief Judge

Marvin Gibbar appeals from the district court's decision upon judicial review affirming the Idaho Transportation Department's order suspending Gibbar's driver's license after he failed a blood alcohol concentration test. We affirm.

## I.

## FACTS AND PROCEDURE

On July 14, 2004, Gibbar was sitting in his pickup in a grocery store parking lot. As a Clearwater County Sheriff's Deputy walked past the pickup, Gibbar waved to the officer in a way that, along with Gibbar's red face and red and glassy eyes, made the officer suspect that Gibbar had been drinking alcohol. When Gibbar drove his vehicle out of the parking lot, Gibbar's driving made the officer even more suspicious because he crossed the center line and

1

then twice weaved into the parking area on the extreme right side of the street. Ultimately, the officer stopped Gibbar, conducted field sobriety tests, and arrested Gibbar for driving under the influence (DUI). At the police station, Gibbar agreed to take a blood alcohol concentration (BAC) test. The breathalyzer test indicated Gibbar's blood alcohol content was .10, which is above the legal limit of .08. The officer seized Gibbar's driver's license, and he was issued a notice of suspension and a temporary license. Gibbar's license had previously been suspended for DUI, so his license was suspended for one year.

Gibbar requested a hearing to contest the administrative license suspension. Prior to the hearing, Gibbar made discovery requests, some of which were denied. Gibbar raised an exhaustive list of challenges to his license suspension at the administrative hearing, which was conducted over the telephone. The hearing officer rejected each of these contentions and affirmed the one-year license suspension. Gibbar petitioned for judicial review by the district court, which affirmed the hearing officer's decision. Gibbar again appeals.

## II.

## STANDARD OF REVIEW

The Idaho Administrative Procedures Act (IDAPA) governs the review of department decisions to deny, cancel, suspend, disqualify, revoke or restrict a person's driver's license. *See* I.C. §§ 49-201, 49-330, 67-5201(2), 67-5270. In an appeal from the decision of the district court acting in its appellate capacity under IDAPA, this Court reviews the agency record independently of the district court's decision. *Marshall v. Idaho Dep't of Transp.,* 137 Idaho 337, 340, 48 P.3d 666, 669 (Ct. App. 2002). This Court does not substitute its judgment for that of the agency as to the weight of the evidence presented. I.C. § 67-5279(1); *Marshall,* 137 Idaho at 340, 48 P.3d at 669. This Court instead defers to the agency's findings of fact unless they are clearly erroneous. *Castaneda v. Brighton Corp.,* 130 Idaho 923, 926, 950 P.2d 1262, 1265 (1998); *Marshall,* 137 Idaho at 340, 48 P.3d at 669. In other words, the agency's factual determinations are binding on the reviewing court, even where there is conflicting evidence before the agency, so long as the determinations are supported by substantial competent evidence in the record. *Urrutia v. Blaine County, ex rel. Bd. of Comm's,* 134 Idaho 353, 357, 2 P.3d 738, 742 (2000); *Marshall,* 137 Idaho at 340, 48 P.3d at 669.

A court may overturn an agency's decision where its findings, inferences, conclusions, or decisions: (a) violate statutory or constitutional provisions; (b) exceed the agency's statutory

2

authority; (c) are made upon unlawful procedure; (d) are not supported by substantial evidence in the record; or (e) are arbitrary, capricious, or an abuse of discretion. I.C. § 67-5279(3). The party challenging the agency decision must demonstrate that the agency erred in a manner specified in I.C. § 67-5279(3) and that a substantial right of that party has been prejudiced. *Price v. Payette County Bd. of County Comm'rs*, 131 Idaho 426, 429, 958 P.2d 583, 586 (1998); *Marshall,* 137 Idaho at 340, 48 P.3d at 669. If the agency's decision is not affirmed on appeal, "it shall be set aside . . . and remanded for further proceedings as necessary." I.C. § 67-5279(3).

## III.

## ANALYSIS

The administrative license suspension (ALS) statute, I.C. § 18-8002A, requires that the Idaho Transportation Department (ITD) suspend the driver's license of a driver who has failed a BAC test administered by a law enforcement officer. The period of suspension is ninety days for a driver's first failure of an evidentiary test and one year for any subsequent test failure within five years. I.C. § 18-8002A(4)(a). A person who has been notified of such an administrative license suspension may request a hearing before a hearing officer designated by the ITD to contest the suspension. I.C. § 18-8002A(7). At the administrative hearing, the burden of proof rests upon the driver to prove any of the grounds to vacate the suspension. I.C. § 18-8002A(7); *Kane v. State, Dep't of Transp.*, 139 Idaho 586, 590, 83 P.3d 130, 134 (Ct. App. 2003). The hearing officer must uphold the suspension unless he or she finds, by a preponderance of the evidence, that the driver has shown one of several grounds enumerated in I.C. § 18-8002A(7) for vacating the suspension. Those grounds include:

> (a) The peace officer did not have legal cause to stop the person; or
> (b) The officer did not have legal cause to believe the person had been driving or was in actual physical control of a vehicle while under the influence of alcohol, drugs or other intoxicating substances in violation of the provisions of section 18-8004, 18-8004C or 18-8006, Idaho Code; or
> (c) The test results did not show an alcohol concentration or the presence of drugs or other intoxicating substances in violation of section 18-8004, 18-8004C or 18-8006, Idaho Code; or
> (d) The tests for alcohol concentration, drugs or other intoxicating substances administered at the direction of the peace officer were not conducted in accordance with the requirements of section 18-8004(4), Idaho Code, or the testing equipment was not functioning properly when the test was administered . . . .

3

The hearing officer's decision is subject to challenge through a petition for judicial review. I.C. § 18-8002A(8); *Kane*, 139 Idaho at 589, 83 P.3d at 133.

**A.     Legal Cause**

Gibbar argues that the arresting officer lacked legal cause to stop Gibbar and lacked legal cause to believe Gibbar was driving or was in actual physical control of a vehicle while under the influence of alcohol. We note initially that, under I.C. § 18-8002A(7), it was Gibbar's burden to present evidence affirmatively showing that the officer lacked legal cause to stop Gibbar's vehicle or the officer lacked legal cause to believe Gibbar was driving under the influence.

**1.     Legal cause for stop**

Gibbar argues the evidence did not support a finding that the officer had legal cause to stop him. A traffic stop by an officer constitutes a seizure of the vehicle's occupants and implicates the Fourth Amendment's prohibition against unreasonable searches and seizures. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). Under the Fourth Amendment, an officer may stop a vehicle to investigate possible criminal behavior if there is a reasonable and articulable suspicion that the vehicle is being driven contrary to traffic laws. *United States v. Cortez*, 449 U.S. 411, 417 (1981); *State v. Flowers*, 131 Idaho 205, 208, 953 P.2d 645, 648 (Ct. App. 1998). The reasonableness of the suspicion must be evaluated upon the totality of the circumstances at the time of the stop. *State v. Ferreira*, 133 Idaho 474, 483, 988 P.2d 700, 709 (Ct. App. 1999). The reasonable suspicion standard requires less than probable cause but more than mere speculation or instinct on the part of the officer. *Id*. An officer may draw reasonable inferences from the facts in his or her possession, and those inferences may be drawn from the officer's experience and law enforcement training. *State v. Montague*, 114 Idaho 319, 321, 756 P.2d 1083, 1085 (Ct. App. 1988). Suspicion will not be found to be justified if the conduct observed by the officer fell within the broad range of what can be described as normal driving behavior. *Atkinson*, 128 Idaho at 561, 916 P.2d at 1286.

The hearing officer properly concluded that Gibbar failed to prove that the arresting officer lacked legal cause to stop Gibbar. The officer observed Gibbar's red face and red and glassy eyes, and noticed Gibbar suspiciously wave at the officer while still parked in the grocery store parking lot. The officer also knew that Gibbar was on probation and was prohibited from drinking alcohol. Based on this conduct, the officer's testimony at the hearing was that Gibbar's

4

"appearance did not look like a person who was not intoxicated." When Gibbar drove out of the parking lot, he soon crossed the center line and then twice weaved into the parking area on the extreme right side of the street. Gibbar testified that he crossed the center line to go around a pedestrian who started to step into the street. Even assuming that is true, the officer's other observations gave reasonable suspicion for the stop. We conclude that, at the time of the stop, the officer possessed sufficient facts to reasonably infer that Gibbar was driving while intoxicated. Accordingly, we uphold the hearing officer's finding that there was legal cause for the stop.

### 2. Legal cause to believe Gibbar was driving under the influence

Gibbar next argues the evidence does not support a finding that the officer had legal cause to believe he was driving while under the influence of alcohol and hence was not justified in requesting that Gibbar submit to a BAC test. Idaho appellate courts have not yet decided whether the "legal cause" to request evidentiary testing referenced in I.C. § 18-8002(4)(b) is equated to probable cause for an arrest or reasonable suspicion. *See State v. Thompson*, 138 Idaho 512, 514-15, 65 P.3d 534, 536-37 (Ct. App. 2003). We also need not decide that question in this case because the officer had probable cause.

Probable cause for an arrest exists where the facts and circumstances within the officer's knowledge and of which he has reasonably trustworthy information, are sufficient to warrant a prudent person in believing that the suspect has committed or is committing an offense. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991); *Beck v. Ohio*, 379 U.S. 89, 91 (1964); *Brinegar v. United States*, 338 U.S. 160, 175-76 (1949); *State v. Julian*, 129 Idaho 133, 137, 922 P.2d 1059, 1063 (1996). When assessing a police officer's determination of probable cause in the field, a court must take into consideration the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. *Brinegar*, 338 U.S. at 175; *State v. Kysar*, 116 Idaho 992, 993, 783 P.2d 859, 860 (1989). In determining whether there is probable cause for an arrest, an officer is entitled to draw reasonable inferences from the available information in light of the knowledge gained from his or her previous experience and training. *Kysar*, 116 Idaho at 993, 783 P.2d at 860; *see also Ornelas v. United States*, 517 U.S. 690, 700 (1996); *United States v. Ortiz*, 422 U.S. 891, 897 (1975); *United States v. Brignoni-Ponce*, 422 U.S. 873, 884-85 (1975).

5

Gibbar concedes that the record establishes that Gibbar was weaving, that the officer smelled alcohol inside Gibbar's vehicle and on his person, that Gibbar admitted to drinking two beers after initially denying any consumption of alcohol, and that Gibbar's eyes were bloodshot. Despite this evidence, Gibbar argues that the officer did not have legal cause to believe that Gibbar was driving while under the influence of alcohol because the officer failed to follow the proper procedures for conducting the field sobriety tests. Gibbar also argues that the officer had facts available to him dispelling the evidence of intoxication. Gibbar relies on his statements to the officer that he had been baling and loading hay in the 100-degree heat to explain his appearance, that he may have had trouble with the front-end of his pickup to explain the weaving, and that he crossed the center line to avoid a pedestrian. We conclude that the officer had legal cause when Gibbar weaved in and out of his lane, admitted to drinking alcohol, smelled of alcohol, and had bloodshot eyes. Gibbar's allegations that the field sobriety tests were conducted improperly and his alternative explanations for his appearance and driving do not overcome the evidence possessed by the officer that Gibbar was under the influence of alcohol. Therefore, the hearing officer properly concluded that Gibbar did not meet his burden of proving that the officer lacked legal cause to believe Gibbar was driving while under the influence of alcohol.

**B.      Compliance with Waiting Period**

Gibbar next contends that the hearing officer erred in finding that the officer properly observed Gibbar for fifteen minutes before administering the breath test, as required by the manual for the Intoxilyzer 5000. The manual requires that the breath test subject be monitored for a period of fifteen minutes immediately prior to administration of the breath test to assure that the subject did not smoke, ingest any substance, vomit, or belch, which actions could render the breath test inaccurate. In the absence of a validly conducted fifteen-minute wait required by the manual, the hearing officer should vacate the license suspension because the breath test was not conducted in accordance with the requirements of I.C. § 18-8004(4). I.C. § 18-8002A(7)(d).

Gibbar concedes that the record shows the fifteen-minute waiting period started at 18:41, and the first test was administered at 18:56. Nonetheless, Gibbar argues that the first test should not have occurred until 18:57 to ensure fifteen minutes had elapsed. Alternatively, Gibbar argues that the officer improperly used his wristwatch to time the fifteen-minute wait when he was required to use the clock on the Intoxilyzer 5000. The printed portion of the Intoxilyzer

6

5000 printout does not show that a fifteen-minute wait occurred because the officer used his wristwatch instead of the clock.  However, below the heading for additional information and/or remarks on the printout, the officer indicated that he had timed the fifteen-minute wait with his wristwatch.  The officer also wrote in 18:41 in a space provided on the printout for the time first observed.

The hearing officer properly relied upon the evidence in the record to conclude that the fifteen minutes had elapsed.  The evidence indicates that the officer noted on the Intoxilyzer 5000 printout that the fifteen-minute period had elapsed, from 18:41 to 18:56, before Gibbar's first breath test based on his observation of his wristwatch.  The police report also noted that the fifteen-minute wait had occurred.  Gibbar's argument that the fifteen minutes could, hypothetically, have not completely expired between 18:41 and 18:56 is insufficient to show that the hearing officer's factual determination was clearly erroneous.  *See Castaneda v. Brighton Corp.,* 130 Idaho 923, 926, 950 P.2d 1262, 1265 (1998); *Marshall,* 137 Idaho at 340, 48 P.3d at 669.

The hearing officer also properly found that the arresting officer did not violate the procedures by using his wristwatch.  Gibbar does not argue that the Intoxilyzer 5000 manual and its standard operating procedures prohibit using a wristwatch.  Instead, Gibbar argues that question 75 of the August 1, 1999, Intoxilyzer 5000 operator examination and the answer key to that examination indicate that the official start time is the time that the Intoxilyzer 5000 prints out as the time when the air blank sample was taken.  From this exam question, Gibbar urges us to infer that the *only* permissible way to time the fifteen minutes is by conducting the air blank test at the start of the fifteen minutes so that the Intoxilyzer 5000 printout properly prints out the elapsed fifteen-minute wait period.  However, the manual and the standard operating procedures do not indicate that use of a wristwatch is impermissible.  Therefore, the hearing officer properly found that the officer could time the fifteen-minute wait with his wristwatch.

## C.    Due Process

### 1.    Discovery

Gibbar argues that his procedural due process rights were violated because the ALS hearing officer did not issue a subpoena to compel the testimony of the director of the state police's breath testing program or order the discovery of all documents he requested.  Gibbar

7

further argues that I.C. § 18-8002A violates his due process rights by not providing for adequate time for discovery before the administrative hearing because discovery only lasts thirty days.

The ALS statute does not provide rules of discovery for ALS hearings, but I.C. § 18-8002A(10) authorizes the ITD to adopt rules deemed necessary to implement the provisions of the ALS statute. Pursuant to ITD rule, the hearing officer assigned to the matter may, upon written request, issue subpoenas requiring the attendance of witnesses or the production of documentary or tangible evidence at a hearing. IDAPA 39.02.72.300.01; *see also In re Mahurin*, 140 Idaho 656, 659 n.2, 99 P.3d 125, 128 n.2 (Ct. App. 2004). Petitioners may also seek documents through a request or motion for production of documents pursuant to IDAPA 39.02.72.400.01, which states:

> To obtain a photocopy of a document which is public record, relates to the petitioner hearing, and is in the possession of the Department, petitioners shall make a written request to the Department. The Department shall attempt to provide the requested copies prior to the hearing date, but failure to do so shall not be grounds for staying or rescinding a suspension.

Pursuant to IDAPA 39.02.72.400.02, further document discovery may only be conducted in accordance with IDAPA 04.11.01.521. In turn, IDAPA 04.11.01.521 provides that, absent an agreement between the parties, no party before the agency is entitled to engage in discovery unless discovery is authorized by the agency, the party moves to compel discovery, and the agency issues an order directing that the discovery be answered.

Under these administrative discovery rules, the hearing officer has broad discretion in the extent of discovery that he or she orders. Courts review discretionary decisions of hearing officers for an abuse of discretion. I.C. § 67-5279(3)(e). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the court reached its decision by an exercise of reason. *Sun Valley Shopping Ctr., Inc. v. Idaho Power Co.*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991). Accordingly, the multi-tiered inquiry of *Sun Valley Shopping Ctr.* also applies to a court's review of the discretionary decisions of an ALS hearing officer.

However, in addition to complying with the multi-tiered inquiry of *Sun Valley Shopping Ctr.,* the hearing officer's discretionary decision must comply with the procedural due process

guarantees of the United States and Idaho Constitutions. Although Gibbar does not distinguish whether he argues a violation of the Due Process Clauses of the United States or Idaho Constitution, the due process guarantees derived from the two constitutions are substantially the same. *Rudd v. Rudd*, 105 Idaho 112, 115, 666 P.2d 639, 642 (1983). Because the suspension of issued driver's licenses involves state action that adjudicates important interests of the licensees, drivers' licenses may not be taken away without procedural due process. *Dixon v. Love*, 431 U.S. 105, 112 (1977); *Bell v. Burson*, 402 U.S. 535, 539 (1971); *State v. Ankney*, 109 Idaho 1, 3-4, 704 P.2d 333, 335-36 (1985). Courts must consider three factors in procedural due process challenges:

> [F]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

The Idaho Supreme Court has applied the *Matthews* test to hold that procedural due process was adequately provided when the ITD suspended the license of a driver who refused to take a breathalyzer test. *See Ankeny*, 109 Idaho at 4-5, 704 P.2d at 336-37. The Idaho Supreme Court based its holding on the state's strong interest in preventing intoxicated persons from driving and the driver's right to a prompt post-suspension hearing under the statute then in effect to challenge the suspension. *Id.*; *see also Mackey v. Motrym*, 443 U.S. 1, 10-19 (1979); *Matter of McNeely*, 119 Idaho 182, 190-91, 803 P.2d 911, 919-20 (Ct. App. 1990). In *McNeely*, a driver argued procedural due process violations existed in the notice provided by an advisory form given to the driver prior to refusing a breathalyzer test and in the applicable statute's failure to allow the driver to choose which type of test to which he would be subjected. This Court held that the state's strong interest in preventing intoxicated persons from driving and in avoiding overly burdensome procedures outweighed the driver's interest in maintaining his driver's license, even though the driver's interest was substantial. *McNeeley*, 119 Idaho at 191, 803 P.2d at 920.

Prior to the ALS hearing, Gibbar requested an opportunity to copy, inspect, or photograph an assortment of materials, including materials related to his BAC test, the

9

breathalyzer machine used, as well as general testing procedures and their underlying scientific rationale. Gibbar was provided with a portion of the log for the breath testing instrument used in his case and all materials forwarded to the ITD by the Clearwater County Sheriff's Office pursuant to I.C. § 18-8002A(5)(b). In his appellate brief, Gibbar vaguely argues that he was wrongfully denied a subpoena requiring the testimony of the director of the state police's breath testing program, access to the log for the breath testing instrument used in his case, access to "COBRA" information, and access to training information for operators of the Intoxilyzer 5000. However, Gibbar's brief provides little, if any, citation to portions of the record supporting his argument that he requested all of these materials and provides almost no explanation of why these materials in particular were relevant. At oral argument, Gibbar appeared to assert that he wished to challenge the denial of all the voluminous items he originally requested which the hearing officer did not order produced, even though he identified none of these additional items specifically in his brief.

We note that this Court will not search the record for error. *See State v. Fee*, 124 Idaho 170, 174, 857 P.2d 649, 653 (Ct. App. 1993). Error is never presumed on appeal and the burden of showing it is on the party alleging it. *Stewart v. Sun Valley Co.*, 140 Idaho 381, 384, 94 P.3d 686, 689 (2004). We therefore decline to address the full scope of items to which Gibbar may have been denied access in discovery. Instead, we will only address those items for which Gibbar provided both citation to the record and argument in his brief.

Gibbar argues that his procedural due process rights were violated because the hearing officer denied Gibbar's request for a subpoena requiring the testimony of the director of the state police's breath testing program. The state argues that the hearing officer properly denied Gibbar's request for such a subpoena because Gibbar did not demonstrate the director's testimony was necessary. Gibbar briefly argued the asserted relevance of the director's testimony in a motion before the hearing officer, stating:

> [T]he State has set no standards with regard to the wet bath devise [sic] or the solution regarding maintenance or calibration. These issues have been litigated in other states, and said states such as Washington has [sic] been found wanting because of standards violations for the wet bath thermometers.

The hearing officer denied the request, reasoning that the state's rationale for not setting such standards is beyond the scope of the administrative appeal pursuant to I.C. § 18-8002A(7). In contrast, the hearing officer issued subpoenas requiring the attendance of the arresting officer

10

and one of the breath testing specialists who maintained the machine with which Gibbar was tested.

In denying the subpoena requiring the director's testimony, the hearing officer erroneously reasoned that the testimony regarding standards set by the state for maintenance and calibration of the BAC testing machines is not relevant evidence in an ALS hearing. Section 18-8002A(7) specifies that a driver's license suspension will be vacated by the hearing officer if the claimant proves, among other things that:

> (c)     The test results did not show an alcohol concentration or the presence of drugs or other intoxicating substances in violation of sections 18-8004, 18-8004C, or 18-8006, Idaho Code; or
>
> (d)     The tests for alcohol concentration, drugs or other intoxicating substances administered at the direction of the peace officer were not conducted in accordance with the requirements of section 18-8004(4), Idaho Code, or the testing equipment was not functioning properly when the test was administered . . .

We construe these subsections as permitting ALS petitioners to challenge the results of their BAC test by proving that the testing equipment was inaccurate or was not functioning properly because the state has adopted procedures that do not ensure accuracy and proper functioning. Expert testimony aimed at challenging the underlying scientific basis of protocols adopted by the state is relevant to a challenge to a license suspension under subsections (c) and (d) of I.C. § 18-8002A(7). The hearing officer's reasoning in this case therefore has the potential to deprive ALS petitioners of procedural due process by depriving them of the opportunity to present relevant evidence at their hearing, thereby risking erroneous deprivation of their substantial interest in their drivers' licenses. *See McNeeley*, 119 Idaho at 191, 803 P.2d at 920.

Even though the hearing officer erroneously reasoned that challenging the basis of the BAC test is not a relevant inquiry in ALS hearings, Gibbar has not shown that his procedural due process rights were violated. Gibbar asserted that the director's testimony was relevant because "the State has set no standards with regard to the wet bath devise [sic] or the solution regarding maintenance or calibration." Additionally, the transcript from the administrative hearing indicates that Gibbar's counsel repeatedly mentioned and even quoted the protocols for maintaining and calibrating the machines contained in the state's BAC testing manual and standard operating procedure. The record shows that Gibbar possessed evidence that the state had not set standards, and he did not seek the testimony of the director to establish that standards

11

had not been set. Rather, the record reflects that Gibbar sought to use the director's testimony to establish that the state *should* set such standards in order to comply with I.C. § 18-8002A(7).

Under the first prong of the *Matthews* test, the private interest in a driver's license is substantial. *See McNeeley*, 119 Idaho at 191, 803 P.2d at 920. Consequently, contrary to the hearing officer's reasoning, Gibbar should have been permitted to present his own expert testimony challenging the basis of the test had he requested to do so. However, the risk of erroneous deprivation of Gibbar's license, analyzed under the second *Mathews* factor, would not have been decreased if he had questioned the director of the state's breath testing program because there is no reason to believe that she would have testified that the state has unlawfully failed to set wet bath standards. Additionally, under the final *Mathews* factor, requiring hearing officers to order the attendance of the director whenever a petitioner desired would impose an unjustifiably heavy burden on the state. *See Ankeny*, 109 Idaho at 4-5, 704 P.2d at 336-37; *McNeely*, 119 Idaho at 191, 803 P.2d at 920. Complainants should not be allowed to subpoena state employees as a substitute for obtaining their own expert witnesses to testify concerning the validity or adequacy of standards or procedures utilized by the state agency.

An appellate court may affirm a lower court's decision on a legal theory different from the one applied by that court. *Matter of Estate of Bagley*, 117 Idaho 1091, 1093, 793 P.2d 1263, 1265 (Ct. App. 1990). Therefore, we hold that the director's testimony was not necessary to support Gibbar's stated challenge to the basis of the BAC test and would impose an unreasonable burden on the state when alternative methods of presenting such a challenge were available. Contrary to the implications of the hearing officer's rationale for denying the subpoena, Gibbar should have been permitted to challenge the basis of the BAC test had he attempted to present testimony from a privately retained expert. Gibbar's procedural due process rights were not violated by the hearing officer's erroneous reasoning because Gibbar was not denied the opportunity to present his own expert witness or otherwise challenge the basis of the BAC test.

In his brief, Gibbar also vaguely argues he was deprived of access to the log for the breath testing instrument used in his case. The record indicates that Gibbar was provided with the portion of the log showing the instrument's use and maintenance for one month prior to his arrest. Gibbar does not assert in his brief that the period of one month prior to his arrest was insufficient or why. Nor does he cite to any part of the record where he explained to the hearing officer the relevance of the additional logs. *See Mahurin*, 140 Idaho at 659, 99 P.3d at 128

(appellant did not demonstrate deprivation of due process from hearing officer's refusal of discovery request where appellant did not inform hearing officer of the relevance of requested maintenance logs). Therefore, we decline to address the question of how much of the log Gibbar was entitled to inspect prior to his hearing. Because Gibbar was provided with access to a portion of the log and does not assert in his brief that he was entitled to a more substantial portion of the log, or why it would be relevant, we cannot find a procedural due process violation. *See Fee*, 124 Idaho at 174, 857 P.2d at 653.

Gibbar also argues in passing in his brief that he was unlawfully denied access to "COBRA" information and training information for operators of the Intoxilyzer 5000, without citing any portion of the record where he requested, explained the relevance of, or was denied access to such information. Because Gibbar failed to provide sufficient argument and citations to the record regarding these requests, we cannot find a procedural due process violation.

Gibbar also appears to argue that his procedural due process rights were violated because the discovery period in his case was too short. To the extent that Gibbar does make such an argument, we find it unpersuasive. The discovery process enabled Gibbar to receive, a few days in advance of the hearing, the log for the breath testing instrument used in his case as well as all materials forwarded to the ITD by the Clearwater County Sheriff's Office pursuant to I.C. § 18-8002A(5)(b). Gibbar was also allowed to subpoena the arresting officer and a certified breath testing specialist from the Clearwater County Sheriff's Office who was responsible for maintaining the breathalyzer machine used in Gibbar's case. The timeframe for discovery in Gibbar's case was long enough to provide him with discovery responses in sufficient time that he could utilize them for the hearing and thus did not violate his due process rights. Therefore, there has been no showing of a procedural due process violation in the length of the discovery period provided to Gibbar.

### 2. Telephone hearing

Gibbar next argues that his procedural due process rights were violated because his hearing was conducted over the telephone. The district court found no procedural due process violation because the credibility of witnesses was not in issue in Gibbar's hearing.

Under I.C. § 18-8002A(7), the ITD "may conduct all hearings by telephone if each participant in the hearing has an opportunity to participate in the entire proceeding while it is taking place." Gibbar relies upon an Alaska line of cases to argue that his telephone hearing

violated his procedural due process rights. *See Midgett v. Cook Inlet Pre-Trial Facility*, 53 P.3d 1105 (Alaska 2002); *Whitesides v. State, Dep't of Public Safety, Div. of Motor Vehicles*, 20 P.3d 1130 (Alaska 2001). In order to avoid a due process violation under the *Matthews* test, the *Whitesides* court construed Alaska's ALS statute to require in-person hearings where material questions depend on the credibility of the parties' testimony. *Whitesides*, 20 P.3d at 1139.

In the present case, the district court agreed with Gibbar that a telephone hearing would be inadequate if witness credibility were in issue, but found that the testimony in Gibbar's case was uncontested. Gibbar implies that witness credibility is always at issue and that in-person hearings are required to adequately cross-examine witnesses. Gibbar also argues that examination of the state's witnesses was inadequate because those witnesses did not have relevant materials in front of them while participating in the hearings. However, as the district court properly found, the underlying facts were not contested in this case. Gibbar admitted to drinking the day of his arrest. He indicated that he was baling hay, which may have caused him to have bloodshot eyes. Gibbar's testimony does not contradict the testimony of the officer, who testified that Gibbar smelled of alcohol and had bloodshot eyes. Gibbar corroborated the testimony of the officer that he crossed the center line of the street by explaining that there was a pedestrian on the side of the street. Rather than stating that there was no pedestrian, the officer indicated that there may have been a pedestrian. Because the testimony was not contested in this case, *Whitesides* is distinguishable.

We find this case more analogous to *State, ex. rel. Human Servs. Dep't v. Gomez*, 657 P.2d 117 (N.M. 1982). In *Gomez*, a welfare beneficiary argued that terminating his welfare benefits after a telephone hearing violated his due process rights because the hearing officer could not observe his demeanor. The beneficiary would have been entitled to benefits if he were unable to work. The beneficiary testified over the telephone that he could not work. However, this testimony was not inconsistent with reports of medical specialists that he erroneously believed that he was incapable of working. His demeanor and credibility were therefore not in issue because both his testimony and the reports supported the proposition that he believed he could not work. The New Mexico court concluded that the telephone hearing did not deprive the beneficiary of due process because his credibility was not in issue. *Id.* at 118.

Likewise, Gibbar does not contest the other witnesses' versions of the underlying events. We conclude that the telephone hearing posed no risk of erroneous deprivation of Gibbar's

driver's license because credibility was not in issue. *See Mathews*, 424 U.S. at 335. Therefore, Gibbar's due process rights were not violated when he was only allowed to cross-examine witnesses over the telephone.

### 3. Facial challenge

Gibbar also argues that the ALS statute and ITD rules are facially unconstitutional. Gibbar appears to argue that I.C. § 18-8002A, on its face, violates both the procedural and substantive due process guarantees. In support of his facial challenge, Gibbar uses evidence outside of the administrative record to make broad policy arguments. For example, Gibbar relies upon statistics supplied with his brief that show a higher rate of suspensions are vacated at in-person hearings that were conducted under a previous incarnation of the ALS statute. Gibbar also relies upon cases, other than his own, where the ALS scheme has resulted in delays in administrative decisions.

Gibbar argues that the ALS scheme deprives petitioners of procedural due process because it provides limited discovery, permits use of telephone hearings, and creates potential for lengthy delays in the administrative process while a driver's license is suspended, perhaps erroneously. Even assuming that Gibbar may assert a facial due process challenge to portions of the statute that did not infringe his own due process rights, Gibbar's general policy arguments and reliance on other ALS proceedings and statistics outside of the administrative record are inadequate. While it may be true that some petitioners in ALS hearings may experience unreasonable and prejudicial delays under the current system, there is no evidence of such circumstance before us but only counsel's unsubstantiated assertions. The record before us does not show the ALS statute fails to provide procedural due process on its face. *See Ankeny*, 109 Idaho at 4-5, 704 P.2d at 336-37; *McNeely*, 119 Idaho at 191, 803 P.2d at 920.

We are also unpersuaded by Gibbar's substantive due process argument. In *McNeeley*, this Court considered a substantive due process challenge to the ALS statute then in effect. Substantive due process, as guaranteed by both the United States and Idaho Constitutions, embodies the requirement that a statute bear a reasonable relationship to a permissible legislative objective. *McNeely*, 119 Idaho at 189, 804 P.2d at 918; *State v. Reed*, 107 Idaho 162, 167, 686 P.2d 842, 847 (Ct. App. 1984). When legislation involves social or economic interests, it may deprive a person of life, liberty or property only if it has a rational basis--that is, the reason for the deprivation may not be so inadequate that it may be characterized as arbitrary. *Sandpoint*

15

*Convalescent Servs., Inc. v. Idaho Dep't of Health and Welfare*, 114 Idaho 281, 282, 756 P.2d 398, 399 (1988); *Pace v. Hymas*, 111 Idaho 581, 586, 726 P.2d 693, 698 (1986); *McNeely*, 119 Idaho at 189, 804 P.2d at 918. Gibbar has failed to demonstrate that I.C. § 18-8002A may be characterized as arbitrary.

## IV.

## CONCLUSION

Gibbar has not shown that the officer lacked legal cause to stop his pickup or to believe he was driving while under the influence of alcohol. Furthermore, Gibbar has not demonstrated that the officer failed to observe the fifteen-minute waiting period prior to administering Gibbar's BAC test. Finally, Gibbar has not shown that his due process rights were violated or that the ALS statute is facially unconstitutional. Accordingly, we affirm the district court's decision upon judicial review affirming ITD's order suspending Gibbar's driver's license after he failed a BAC test. Costs, but not attorney fees, are awarded to the respondent, State of Idaho.

Judge LANSING and Judge GUTIERREZ, **CONCUR.**