# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 38969

IN THE MATTER OF THE SUSPENSION )
OF THE DRIVER'S LICENSE OF LINDA )
LEE HUBBARD. )
_____)
LINDA LEE HUBBARD, )
)  **2012 Opinion No. 18**
       Petitioner-Appellant, )
)  **Filed: April 10, 2012**
v. )
)  **Stephen W. Kenyon, Clerk**
STATE OF IDAHO, DEPARTMENT OF )
TRANSPORTATION, )
)
       Respondent. )
_____)

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Valley County. Hon. Michael R. McLaughlin, District Judge.

District court order affirming decision of hearing officer, <u>affirmed</u>.

Michael G. Pierce, Cascade, for appellant.

Michael Kane & Associates, PLLC; Michael J. Kane, Boise, for respondent.

_____

LANSING, Judge

Linda Lee Hubbard appeals from the district court's decision affirming an Idaho Transportation Department (ITD) hearing officer's order upholding an administrative suspension of her driver's license. We affirm.

## I.

## BACKGROUND

On September 6, 2010, Hubbard was stopped for a traffic violation and was subsequently arrested for driving under the influence of alcohol in violation of Idaho Code § 18-8004. She consented to a breath test, which was administered on a Lifeloc FC20 breath testing instrument. The test showed breath alcohol concentrations of .113 and .109, and Hubbard's driver's license was administratively suspended. She appealed this suspension to the ITD. Following a hearing,

1

an ITD hearing officer sustained the license suspension. Hubbard filed a petition for review of the hearing officer's decision by the district court. The district court affirmed the suspension order, and Hubbard now appeals. She asserts that her license suspension should be set aside because her breath test was not conducted in conformity with applicable standards and the testing equipment was not functioning properly when the test was administered. She argues that the hearing officer's findings to the contrary were not supported by the evidence.

## II.

## ANALYSIS

Idaho Code § 18-8002A(4) directs the ITD to suspend the driver's license of any driver who fails an alcohol concentration test. The driver may then request a hearing to contest the suspension before a hearing officer designated by the ITD. I.C. § 18-8002A(7). In the administrative hearing, the burden of proof rests upon the driver to prove grounds sufficient to vacate the suspension. I.C. § 18-8002A(7); *In re Suspension of Driver's License of Gibbar*, 143 Idaho 937, 942, 155 P.3d 1176, 1181 (Ct. App. 2006); *In re Mahurin*, 140 Idaho 656, 658, 99 P.3d 125, 127 (Ct. App. 2004); *Kane v. State, Dep't of Transp.*, 139 Idaho 586, 590, 83 P.3d 130, 134 (Ct. App. 2003). The hearing officer must uphold the suspension unless the officer finds, by a preponderance of the evidence, that the driver has shown one of several grounds enumerated in Section 18-8002A(7) for vacating the suspension. These grounds include that the tests for alcohol concentration were not conducted by a method that has been approved by the Idaho State Police ("ISP") pursuant to Idaho Code § 18-8004(4), and that the testing equipment was not functioning properly when the test was administered. I.C. § 18-8002A(7)(d).

The hearing officer's decision is subject to challenge through a petition for judicial review. I.C. § 18-8002A(8); *Gibbar*, 143 Idaho at 942, 155 P.3d at 1181; *Mahurin*, 140 Idaho at 658, 99 P.3d at 127; *Kane*, 139 Idaho at 589, 83 P.3d at 133. Upon judicial review, a hearing officer's decision must be affirmed unless the court determines that the hearing officer's findings, inferences, conclusions or decisions are: (a) in violation of constitutional or statutory provisions; (b) in excess of statutory authority of the agency; (c) made upon unlawful procedure; (d) not supported by substantial evidence on the record as a whole; or (e) arbitrary, capricious, or an abuse of discretion. I.C. § 67-5279(3). The reviewing court may not substitute its judgment for that of the hearing officer as to the weight of the evidence on questions of fact. I.C. § 67-5279(1). In an appeal from a district court's decision where the district court was reviewing an

2

agency's ruling, this Court will review the agency record independently of the district court's decision. *Castaneda v. Brighton Corp.*, 130 Idaho 923, 926, 950 P.2d 1262, 1265 (1998).

The ISP has been authorized to adopt methods to analyze breath samples for alcohol concentration, I.C § 18-8004(4), and to adopt administrative rules governing requirements for evidentiary testing, including the need to calibrate or check testing equipment. I.C. § 18-8002A(3). Through this legislative grant of authority, the ISP has approved a number of breath testing machines for use in Idaho, including the machine at issue here, the Lifeloc FC20. While the ISP has adopted administrative "Rules Governing Alcohol Testing," *see* Idaho Administrative Code (IDAPA) 11.03.01 *et seq.*, its adopted standards for evidentiary testing and calibration of equipment are not presented in the body of those rules. Instead, the applicable rule at the time of Hubbard's test, former IDAPA 11.03.01.013.03 (3-19-99),[1] stated:

> Breath tests shall be administered in conformity with standards established by the department. Standards shall be developed for each type of breath testing instrument used in Idaho, and such standards shall be issued in the form of standard operating procedures and training manuals.

The ISP posts its standard operating procedures and training and reference manuals on its website, and it amends these documents from time to time. Here we address the administrative rules, standard operating procedures, and manuals in effect on September 6, 2010, the time of the administration of Hubbard's breath tests. We treat those documents as "rules" for purposes of judicial review because they constitute the only materials by which the ISP has acted upon the Idaho Code § 18-8002A(3) authorization for the ISP to "prescribe by rule" testing instruments and methods that are approved by the ISP. *In re Schroeder*, 147 Idaho 476, 479 n.3, 210 P.3d 584, 587 n.3 (Ct. App. 2009).

The issues raised by Hubbard relate to various "performance verifications" done on the Lifeloc FC20 instrument used to test her breath. A performance verification is a "verification of the accuracy of the breath testing instrument utilizing a simulator and a performance verification solution." Idaho State Police, 6.0 Idaho Standard Operating Procedure: Breath Alcohol Testing, Glossary (effective 8/27/10) ("SOP"). A performance verification solution is a "premixed ethyl alcohol solution used for field performance verifications." *Id.* Idaho State Police Forensic

---

[1] Effective April 7, 2011, the rule was amended and renumbered as IDAPA 11.03.01.014.03.

Services tests each lot of verification solution (identified by lot number) to determine its known alcohol level at the time of testing, which is referred to as a "target value," and issues a "certificate of analysis" declaring that target value for that particular lot number of solution. The certificate of analysis for the verification solution used in this case states a target value of .083.

With respect to the testing instrument at issue here, SOP 5.1.3 specifies that a performance verification on a Lifeloc FC20 "must be performed within 24 hours, before or after an evidentiary test to be approved for evidentiary use." To do this, the operator attaches the solution to the instrument with a tube, and blows into the tube through a mouthpiece until a result is obtained. Idaho LIFELOC FC20 Reference Manual (Rev. Effective 8/20/10) ("manual"). A performance verification consists of two samples, SOP 5.1.2, and is acceptable according to ISP's standards if each sample falls within 10 percent above or below the solution's target value. SOP 5.1.5.

The agency record before the hearing officer in this case included the arresting officer's affidavit, which stated in a conclusory fashion that testing was done in accord with applicable statutes and the standards and methods adopted by the ISP. Pursuant to a subpoena issued on Hubbard's request, a "solution log" for the specific Lifeloc FC20 instrument used here was made part of the record. The log consists of the arresting officer's handwritten notations of the results of performance verifications and evidentiary tests conducted before and after September 6, 2010, the date of Hubbard's evidentiary testing. The agency record also included a printout from the Lifeloc FC20 showing Hubbard's evidentiary test results.

On appeal, Hubbard first contends that she is entitled to relief from suspension because her tests for alcohol concentration were not conducted by a method that was approved by the ISP pursuant to Idaho Code § 18-8004(4). *See* I.C. § 18-8002A(7)(d). Specifically, she asserts that the printout of her tests showed that the most recent performance verification prior to her September 6 breath test was performed on August 27, 2010, and yielded an alcohol concentration result of .042 for a solution with a target value of .083. She argues that because this result fell far outside of the acceptable 10 percent variance, the officer violated the prescribed procedures by conducting her breath test with a machine that had "failed" the most recent performance verification. We are constrained to disagree. The SOPs do not require that the most recent performance verification demonstrate that the equipment is operating properly *before* a breath test. Rather, SOP 5.1.3 states that a "performance verification solution must be performed within

4

24 hours, before or after an evidentiary test to be approved for evidentiary use." Under this standard, an instrument is approved for evidentiary use if it yielded an acceptable performance verification within twenty-four hours after an evidentiary breath test, even if it had failed the most recent performance verification preceding the evidentiary test.

Here, although the most recent performance verification before Hubbard's breath test showed an unacceptable result, another performance verification conducted within an hour after her breath test showed results of .081 on each of two samples, which was well within the acceptable range on the .083 test solution. Therefore, it has not been shown that the officer failed to comply with standard operating procedures when he conducted Hubbard's test.

Further, Hubbard's argument that Lifeloc FC20 should have been taken out of service after yielding the .042 result on a performance verification on August 27 is incorrect. According to the SOPs, the only circumstance where a breath testing instrument *must* be taken out of service is where it fails three consecutive performance verifications (consisting of six samples) after certain troubleshooting procedures have been employed and an acceptable result within verification limits still has not been obtained. SOP 7.1-7.1.5.

Hubbard argues in the alternative that even if the officer complied with the requisite procedures in conducting her test, her license suspension should be set aside because she established that the testing equipment was not functioning properly when the test was administered. This is a basis for setting aside a license suspension under Idaho Code § 18-8002A(7)(d). Hubbard contends that a malfunction is demonstrated by evidence of a wide fluctuation in performance verification readings immediately prior to and immediately after her September 6, 2010, test. She notes that although the log reflects acceptable performance verification results of .081 and .081 within an hour after her evidentiary test on September 6, the printout[2] shows an August 27, 2010, performance verification result of .042 on a .083 solution, while on September 9, according to the officer's log entries, the same instrument returned readings of .090 and .089 on the same solution. Hubbard asserts that some of the hearing officer's findings that discounted the significance of the .042 and the .090/.089 verification results are contrary to uncontroverted evidence in the record.

---

[2]     The .042 performance verification sample was not entered in the log.

We agree that some of the hearing officer's findings are not supported by the evidence. The hearing officer said that "Hubbard did not adequately provide proof . . . that the [August 27, 2010] .042 performance verification was the last check prior to Hubbard's breath test." The manual establishes that this finding is wrong. The manual refers to performance verifications as "wet checks" and states that the Lifeloc FC20 instrument "can store *only* the most recent [wet check] result" (emphasis added), and it directs the operator to "[l]og or print the results as the instrument will overwrite successive wet check results." The August 27 verification with a .042 result was stored on the instrument at the time of Hubbard's test, as revealed by a printout from that instrument. Thus, it was the last performance verification performed on the instrument prior to Hubbard's breath test. The hearing officer also found that it is "unknown what simulator solution lot number was used to perform the September 9, 2010, performance verification checks." Contrary to this finding, the solution log shows that the same simulator solution lot number (9802), which had a certified target value of .083, was used to perform *all* of the performance verifications at issue in this case, including the one on September 9, 2010.

These erroneous findings were not directly addressed by the district court because it concluded that any performance verification results other than the one that was obtained on September 6, 2010, were not relevant. In substance, the district court held that the ISP's acceptable performance verification result on the day of Hubbard's test established that the machine was working correctly as a matter of law. We do not agree with that analysis. Compliance with the ISP's standards for operation of the instrument is not a guarantee that it was operating correctly. Inadequate or incomplete operating standards and procedures could fail to disclose when a testing instrument is not functioning correctly. In *Gibbar*, we interpreted Idaho Code § 18-8002A(7)(c) and (d) "as permitting [administrative license suspension] petitioners to challenge the results of their BAC test by proving that the testing equipment was inaccurate or was not functioning properly because the State has adopted procedures that do not ensure accuracy and proper functioning." *Gibbar*, 143 Idaho at 947, 155 P.3d at 1186. Similarly, in *State v. Hartwig*, 112 Idaho 370, 732 P.2d 339 (Ct. App. 1987), we held that although breath test results were properly admitted into evidence at a criminal trial because the State showed that the designated state agency had approved the machine for use and that the machine was operated in compliance with approved standards, the reliability and performance of the machine is still subject to challenge. We stated: "If there is evidence that any particular machine has

6

malfunctioned or was designed or operated so as to produce unreliable results, such evidence would be relevant to both the admissibility and weight of the test results." *Id.* at 375, 732 P.2d at 344. *See also State v. Ward*, 135 Idaho 400, 403-05, 17 P.3d 901, 904-06 (Ct. App. 2001). Thus, compliance with standards approved by the ISP does not preclude a challenge under Idaho Code § 18-8002A(7)(d) that the testing equipment was not functioning properly when the test was administered. Of course, the burden to prove malfunction rests upon the petitioner, as noted above.

Thus, the question presented is whether Hubbard met her burden to demonstrate that the testing equipment was malfunctioning when her test was conducted. We conclude that, even with the hearing officer's erroneous findings corrected and with all of the evidence properly considered, Hubbard has not met that burden. The only evidence of any irregularity or anomaly in the instrument's performance was the printout that indicated a performance verification reading of .042 for a solution with a known alcohol concentration of .083 ten days before Hubbard's test. There was no testimony as to the significance or possible causes of this anomaly. For example, it cannot be discerned whether the .042 reading was the result of an actual, purposeful performance verification test, or some accidental or uncontrolled activation of the equipment. SOP 7.1.2 identifies a number of factors that could account for an aberrant verification result, including incorrect use of hoses, not having the instrument properly warmed, and incorrect blowing technique by the operator. The evidence here does not rule out any of these possible explanations for the .042 result on the instrument's printout. In short, while the .042 performance verification result may raise some question about the instrument's performance, standing alone it is insufficient to support a finding that the equipment was malfunctioning when Hubbard's test was performed ten days later, particularly in view of the acceptable performance verification conducted within one hour after her evidentiary test and several more performance verifications with acceptable results during the month that followed.[3] Consequently, notwithstanding certain erroneous findings by the hearing officer, there was no error in the hearing officer's ultimate determination that Hubbard had not met her burden to prove that the testing equipment was not functioning properly when her test was administered.

---

[3]     These include the September 9 performance verification that yielded results of .090 and .089 on the .083 solution. Although these results were near the upper end of the acceptable 10 percent variance, they were still within that range.

### III.

### CONCLUSION

The district court's decision affirming the hearing officer's order upholding the administrative suspension of Hubbard's driver's license is affirmed. Costs on appeal to respondent.

Chief Judge GRATTON and Judge GUTIERREZ **CONCUR.**