## IN THE COURT OF APPEALS OF THE STATE OF IDAHO

### Docket No. 37865

| | | |
|---|---|---|
| IN THE MATTER OF THE DRIVING PRIVILEGES OF: HAMISH ALLAN BELL. | ) ) ) ) | 2011 Opinion No. 62 |
| -------------------------------------------------------- | ) | Filed: October 21, 2011 |
| HAMISH ALLAN BELL, | ) ) | Stephen W. Kenyon, Clerk |
| Petitioner-Appellant, | ) ) | |
| v. | ) ) | |
| IDAHO TRANSPORTATION DEPARTMENT, | ) ) ) | |
| Respondent. | ) ) ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Kathryn A. Sticklen, District Judge.

Order of the district court upholding the suspension of driver's license, <u>affirmed</u>.

Nevin, Benjamin, McKay & Bartlett, Boise, for appellant. Jeffrey E. Brownson argued.

Michael Kane & Associates, PLLC, Boise, for respondent. Michael J. Kane argued.

_____

GRATTON, Chief Judge

Hamish Allan Bell appeals from the district court's decision upon judicial review affirming the Idaho Transportation Department's order suspending Bell's driver's license for failing a blood alcohol concentration test. We affirm.

### I.

### FACTUAL AND PROCEDURAL BACKGROUND

On June 4, 2009, Officer Tucker of the Boise Police Department stopped a vehicle driven by Bell after observing him driving the wrong way on a one-way street. Bell admitted to consuming alcohol, and Officer Tucker called Officer White for assistance. When Officer White arrived, Bell admitted again that he had been drinking. Officer White also detected the odor of

1

an alcoholic beverage and noticed that Bell's eyes were glassy and bloodshot. Officer White administered field sobriety tests, which Bell failed. Officer White placed Bell under arrest for driving under the influence of alcohol and transported him to the Ada County Jail. At the jail, Officer White played the administrative license suspension audio tape to advise Bell of the consequences of refusing a breath test, observed Bell for fifteen minutes, and asked him to submit to a breath test to determine his blood alcohol concentration (BAC) level. Bell initially told Officer White that he would not submit to a breath test, but Officer White informed him that if he refused to take the breath test, a blood sample would be taken. Bell ultimately submitted to the breath test and provided two breath samples, which indicated that Bell's BAC was .154/.157. Officer White seized Bell's driver's license and issued him a notice of license suspension, as well as a temporary (thirty-day) driving permit.

On June 10, 2009, Bell requested an administrative hearing regarding his license suspension. In his request for a hearing, Bell requested that subpoenas be issued to obtain the following information: (1) any audio/video tapes; (2) any and all police reports; (3) a copy of the log sheets for the testing device used to test Bell's breath including the thirty-day periods prior to and after Bell's breath test; (4) a copy of the evidentiary test results; (5) a copy of the calibration certificate for the testing device; and (6) the testing officer's certification.

On June 16, 2009, the hearing officer issued a notice for a telephonic hearing to be held on June 30, 2009. On that same date, the hearing officer also issued subpoenas to the Boise Police Department, with a compliance date of June 29, 2009, for the following information: (1) a copy of any audio and video of the stop/arrest/evidentiary testing of Bell; (2) a copy of any report regarding the stop/arrest/evidentiary testing of Bell; and (3) a copy of the instrument operations log sheets for the period of June 3, 2009, through June 6, 2009. The subpoena directed that these documents be delivered not to Bell, but to the Idaho Transportation Department (ITD) by June 29. Also on June 16, ITD provided an initial discovery response producing documents in its possession, which included a copy of the completed notice of suspension, a copy of the completed temporary permit form, the confiscated driver's license, the arresting officer's sworn statement, and the test results. In addition, the certificate of calibration was included in response to Bell's discovery request. With regard to Bell's request for the testing officer's certification, the hearing officer issued an order denying that request upon

2

finding the evidence was not clearly relevant in light of Officer White's representation in the probable cause affidavit that his certification was valid until December 2010.

On that same day, June 16, 2009, Bell requested a continuance of the administrative hearing because the compliance date of the subpoenas would not give him enough time to review the requested information before the hearing. Bell also asked the hearing officer to reconsider his request for a subpoena for the instrument operations log sheets, as the time frame for the subpoena issued would be insufficient to determine whether the calibration was checked in compliance with Idaho law. In response to Bell's request for a continuance, ITD issued a notice that a ten-day extension had been granted and that the telephonic hearing had been rescheduled to July 9, 2009. The hearing officer did not respond to Bell's request for a new subpoena enlarging the time frame for the log sheets.

On June 25, 2009, the records custodian for the Boise Police Department sent the subpoenaed information to ITD, with the exception of the log sheets because the custodian did not yet have the log sheets for the period of June 3 through June 6, 2009. At the rescheduled hearing on July 9, 2009, Bell's counsel represented that he had received faxed log sheets from ITD covering the period from April 28, 2009, through June 6, 2009, approximately one hour before the hearing. Bell's counsel stated that it was unclear "when those documents were received [by ITD], where they came from, [and] whether the Boise Police Department produced those in response to our Subpoena." He also argued that it appeared clear that the Boise Police Department did not comply with the subpoena and that Bell's suspension should therefore be vacated. The hearing officer stated that he would not "dismiss the suspension just based on a Subpoena issued [sic]," because that was not one of the statutory grounds for vacating a suspension. The hearing officer did, however, note that he would grant a continuance "due to the delay in providing the logs to [Bell]." Bell's counsel stated that he felt "forced," but requested a continuance in order to review the log sheets, which the hearing officer granted, and the hearing was rescheduled to July 23, 2009.

On July 13, 2009, Bell requested additional subpoenas "based upon the disputed instrument operation logsheets that were disclosed," which included the following: (1) the testimony of Callie Downum, ITD, regarding the circumstances surrounding ITD's receipt and disclosure of the instrument operations log sheets; (2) all documents reflecting any and all calibration checks performed from May 1, 2009, to July 13, 2009; (3) the source of the simulator

3

solution used from May 1, 2009, to July 13, 2009; and (4) a copy of all documents identifying the source that provided the simulator solution used from May 1, 2009, to July 13, 2009. Bell also requested further discovery including: (1) a copy of all documents and correspondence showing when, where, and how the log sheets were received; and (2) a copy of all administrative license suspension hearing decisions issued in the last twelve months vacating a driver's license suspension based upon a failure to comply with a subpoena. The hearing officer issued an order on July 14, 2009, denying Bell's requests, but noted that the "Certificate of Analysis for Simulator Solution Lot #8804 and #8101 have been provided."

On July 23, 2009, the telephonic hearing was held. During the hearing, the hearing officer asked Bell to submit copies of the decisions he was citing in his argument. At the close of the hearing, the hearing officer indicated that he would keep the record open in order to allow Bell sufficient time to submit the case law in support of his argument. The hearing officer, on the same date, issued a "Request for Additional Time for Evidence" leaving the record open for fifteen days, or until the evidence was received. Bell submitted those decisions later that day by e-mail. On August 7, 2009, in response to a request from the hearing officer, Bell resubmitted the decisions with relevant sections highlighted. On August 18, 2009, Bell submitted supplemental documentation, including a copy of the State's newly-filed motion to dismiss the criminal charges against Bell.

On September 14, 2009, the hearing officer issued his findings of fact, conclusions of law, and order. The hearing officer concluded that the statutory requirements for suspension of Bell's driver's license were complied with and, therefore, sustained the suspension. Bell filed a petition for judicial review, and the district court affirmed the hearing officer's decision. Bell again appeals.

## II.

## ANALYSIS

The Idaho Administrative Procedures Act 2009 (IDAPA) governs the review of ITD decisions to deny, cancel, suspend, disqualify, revoke, or restrict a person's driver's license. *See* I.C. §§ 49-201, 49-330, 67-5201(2), 67-5270. In an appeal from the decision of the district court acting in its appellate capacity under IDAPA, this Court reviews the agency record independently of the district court's decision. *Marshall v. Dep't of Transp.*, 137 Idaho 337, 340, 48 P.3d 666, 669 (Ct. App. 2002). This Court does not substitute its judgment for that of the

4

agency as to the weight of the evidence presented. I.C. § 67-5279(1); *Marshall,* 137 Idaho at 340, 48 P.3d at 669. This Court instead defers to the agency's findings of fact unless they are clearly erroneous. *Castaneda v. Brighton Corp.,* 130 Idaho 923, 926, 950 P.2d 1262, 1265 (1998); *Marshall,* 137 Idaho at 340, 48 P.3d at 669. In other words, the agency's factual determinations are binding on the reviewing court, even where there is conflicting evidence before the agency, so long as the determinations are supported by substantial and competent evidence in the record. *Urrutia v. Blaine County, ex rel. Bd. of Comm'rs,* 134 Idaho 353, 357, 2 P.3d 738, 742 (2000); *Marshall,* 137 Idaho at 340, 48 P.3d at 669.

The Court may overturn an agency's decision where its findings, inferences, conclusions, or decisions: (a) violate statutory or constitutional provisions; (b) exceed the agency's statutory authority; (c) are made upon unlawful procedure; (d) are not supported by substantial evidence in the record; or (e) are arbitrary, capricious, or an abuse of discretion. I.C. § 67-5279(3). The party challenging the agency decision must demonstrate that the agency erred in a manner specified in I.C. § 67-5279(3) and that a substantial right of that party has been prejudiced. *Price v. Payette County Bd. of County Comm'rs*, 131 Idaho 426, 429, 958 P.2d 583, 586 (1998); *Marshall,* 137 Idaho at 340, 48 P.3d at 669. If the agency's decision is not affirmed on appeal, "it shall be set aside . . . and remanded for further proceedings as necessary." I.C. § 67-5279(3).

The administrative license suspension statute, I.C. § 18-8002A, requires that ITD suspend the driver's license of a driver who has failed a BAC test administered by a law enforcement officer. The period of suspension is ninety days for a driver's first failure of an evidentiary test, and one year for any subsequent test failure within five years. I.C. § 18-8002A(4)(a). A person who has been notified of such an administrative license suspension may request a hearing before a hearing officer designated by ITD to contest the suspension. I.C. § 18-8002A(7). At the administrative hearing, the burden of proof rests upon the driver to prove any of the grounds to vacate the suspension. I.C. § 18-8002A(7); *Kane v. State, Dep't of Transp.*, 139 Idaho 586, 590, 83 P.3d 130, 134 (Ct. App. 2003). The hearing officer must uphold the suspension unless he or she finds, by a preponderance of the evidence, that the driver has shown one of several grounds enumerated in I.C. § 18-8002A(7) for vacating the suspension. Those grounds include:

> (a) The peace officer did not have legal cause to stop the person; or
> (b) The officer did not have legal cause to believe the person had been driving or was in actual physical control of a vehicle while under the influence of

5

alcohol, drugs or other intoxicating substances in violation of the provisions of section 18-8004, 18-8004C or 18-8006, Idaho Code; or

   (c)  The test results did not show an alcohol concentration or the presence of drugs or other intoxicating substances in violation of section 18-8004, 18-8004C or 18-8006, Idaho Code; or

   (d)  The tests for alcohol concentration, drugs or other intoxicating substances administered at the direction of the peace officer were not conducted in accordance with the requirements of section 18-8004(4), Idaho Code, or the testing equipment was not functioning properly when the test was administered; or

   (e)  The person was not informed of the consequences of submitting to evidentiary testing as required in subsection (2) of this section.

I.C. § 18-8002A(7). The hearing officer's decision is subject to challenge through a petition for judicial review. I.C. § 18-8002A(8); *Kane*, 139 Idaho at 589, 83 P.3d at 133.

## A. Due Process

Bell asserts that he has a substantial interest in his driver's license and, therefore, he has a right to procedural due process throughout the administrative hearing proceedings. Bell maintains that his due process rights were violated during the administrative proceeding because: (1) the hearing officer issued subpoenas which prevented him from having sufficient time to review the subpoenaed information prior to the hearing; (2) the hearing officer did not issue all of the subpoenas requested; (3) the hearing officer admitted documents into the record over his objection; (4) the hearing officer acted without authority in extending the administrative hearing a second time; and (5) the hearing officer failed to issue a prompt decision.[1]

Because the suspension of issued driver's licenses involves state action that adjudicates important interests of the licensees, drivers' licenses may not be taken away without procedural due process. *Dixon v. Love*, 431 U.S. 105, 112 (1977); *State v. Ankney*, 109 Idaho 1, 3-4, 704 P.2d 333, 335-36 (1985); *In re Gibbar*, 143 Idaho 937, 945, 155 P.3d 1176, 1184 (Ct. App. 2006). Courts must consider three factors in procedural due process challenges:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal

---

[1] Although Bell does not distinguish whether he argues a violation of the Due Process Clauses of the United States Constitution or Idaho Constitution, the due process guarantees derived from the two constitutions are substantially the same. *Gibbar*, 143 Idaho at 945, 155 P.3d at 1184 (citing *Rudd v. Rudd*, 105 Idaho 112, 115, 666 P.2d 639, 642 (1983)).

and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Idaho's appellate courts have considered the *Mathews* factors in the context of administrative license suspension hearings and have found that while an individual does have a substantial interest in his or her license, that interest may be subordinated by the State's interest in preventing intoxicated persons from driving, particularly where the individual is entitled to review procedures. *See Ankney*, 109 Idaho at 4-5, 704 P.2d at 336-37 (concluding that the then-applicable statute, I.C. § 49-352, which enabled a police officer to seize a person's driver's license prior to a hearing, did not violate procedural due process because there was not a high risk of erroneous deprivation where the statute provided for a prompt post-seizure review, coupled with the requirement that the police officer requesting the evidentiary test have reasonable grounds to believe the driver is intoxicated); *see also In re McNeely*, 119 Idaho 182, 190-91, 804 P.2d 911, 919-20 (Ct. App. 1990) (concluding that the notice provided by the advisory form, as set forth in the applicable statute, did not violate the driver's procedural due process).

Bell does not argue the *Mathews* factors with respect to any of his claims. While he generally argues that he has a procedural due process right throughout the administrative hearing proceedings and that the private interest in his driver's license is substantial, he does not address any of the *Mathews* factors or attempt to apply its balancing test. The only argument he makes regarding the *Mathews* factors is set forth in his reply brief in response to the State's argument on one of the issues.

### 1. Subpoenas issued

Bell first argues that because ITD had taken upon itself to issue subpoenas that ordered the respondents to produce the documents and tangible items one day before the hearing directly to ITD, rather than the petitioner, "under no set of circumstances would the subpoenas issued by the Hearing Officer ensure that all the information would be received by Mr. Bell before the Hearing -- let alone with sufficient time for Mr. Bell and his counsel to review that information in preparation for the Hearing." He contends that because the subpoenas required compliance the day before the administrative hearing and did not require production of the requested materials directly to him, the procedure employed in this case was unconstitutional and the subpoenas violated his right to procedural due process. ITD argues that Bell has failed to

7

provide any authority to support his claim that the subpoenas, or the process regarding subpoenas in administrative license suspension hearings, are unconstitutional. ITD further argues that the issue is moot because Bell requested, and was granted, a continuance in order to review the subpoenaed information.

Regarding the subpoena compliance date, the rules governing administrative license suspensions do not provide a specific time frame in which subpoenas must be complied with prior to an administrative hearing. Nevertheless, Bell maintains that the subpoenas issued in this case violated his procedural due process. Idaho's appellate courts have not recognized a due process violation where a subpoena has been issued with a compliance date set for the day before the administrative hearing. In *Gibbar*, we recognized that Gibbar "appear[ed] to argue that his procedural due process rights were violated because the discovery period in his case was too short." *Gibbar*, 143 Idaho at 948, 155 P.3d at 1187. We noted that "[t]o the extent" Gibbar was making such an argument it was "unpersuasive." *Id.* We held that the time frame for discovery in Gibbar's case, which enabled him to receive discovery responses a few days in advance of the hearing, was long enough to provide him with sufficient time that he could utilize the responses for the hearing and thus did not violate his due process rights. *Id.*

Bell acknowledges our decision in *Gibbar*, noting that we did not find a due process violation in that case. He contends, however, that because the subpoenas issued in this case required compliance the day before the hearing, as opposed to a "few days" in advance of the hearing, on their face they violated his procedural due process rights. In this case, Bell requested a number of subpoenas, and the hearing officer granted some of those requests. The administrative hearing was scheduled for June 30, 2009, and the hearing officer issued subpoenas requiring that the subpoenaed material be received by June 29, 2009. On the same day that the subpoenas were issued, fourteen days before the scheduled hearing, Bell requested a continuance of the hearing in order to have more time to review the subpoenaed material, but did not request an earlier compliance date. Bell indicated that "this request does not in any way imply the hearing was scheduled in order to prejudice Mr. Bell." The hearing officer granted Bell's request and rescheduled the hearing.

While the issuance of subpoenas with a compliance date set the day before an administrative hearing, and even then requiring delivery of the subpoenaed items to ITD instead of the petitioner, may raise the possibility of a due process violation due to insufficient time to

8

prepare,[2] Bell has failed to show such a violation in this case. As noted by the district court, "any potential due process violation was remedied when the hearing was delayed by ten (10) days." Bell did not request that the hearing officer change the compliance date on the subpoenas or otherwise suggest a potential due process violation. Rather, he requested a continuance, specifically acknowledging that his request did not "in any way imply the hearing was scheduled in order to prejudice Mr. Bell." With respect to this claim, the district court reasoned further:

> This delay was permitted by Idaho Code § 18-8002A(7) and was not unreasonable because it gave Bell an opportunity to review the subpoenaed information and decide whether to use it in his defense. Because the statute permits a hearing date to be moved and because the hearing date in this case was moved to accommodate the discovery process, the compliance date on the subpoenas did not result in any due process violation.

Based upon the facts and circumstances of this case, Bell has failed to show a violation of his right to procedural due process.

### 2. Subpoenas requested

Bell contends that the hearing officer wrongfully denied several of his subpoena requests and that such denial deprived him of the opportunity to present relevant evidence at his hearing and, therefore, violated his right to due process. The rules governing administrative license suspensions provide that "[t]he Hearing Officer assigned to the matter *may*, upon written request, issue subpoenas requiring the attendance of witnesses or the production of documentary or tangible evidence at a hearing." IDAPA § 39.02.72.300.01 (emphasis added). The decision to grant or deny a request for a subpoena is clearly discretionary. Courts review discretionary decisions of hearing officers for an abuse of discretion. *Gibbar*, 143 Idaho at 945, 155 P.3d at 1184 (citing I.C. § 67-5279(3)(e)). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the court reached its decision by an exercise of reason. *Sun Valley Shopping Center, Inc. v. Idaho Power Co.*, 119 Idaho 87, 94, 803 P.2d 993, 1000

---

[2] The hearing officer is entitled to conduct the proceedings in an efficient manner, but the practice of requiring compliance the day before a scheduled hearing is strongly discouraged. Engaging in such a practice, however, does not amount to a per se violation of procedural due process.

(1991). Accordingly, the multi-tiered inquiry of *Sun Valley Shopping Center* also applies to a court's review of the discretionary decisions of an ALS hearing officer. *Gibbar*, 143 Idaho at 945, 155 P.3d at 1184. "However, in addition to complying with the multi-tiered inquiry of *Sun Valley Shopping Center*, the hearing officer's discretionary decision must comply with the procedural due process guarantees of the United States and Idaho Constitutions." *Id.*

In this case, Bell requested several subpoenas in order to challenge the suspension of his driver's license. As noted above, the hearing officer granted some of Bell's requests and denied others. Bell contends that the subpoenas not issued were necessary to obtain relevant information to challenge Officer White's certification; to challenge the accuracy and proper functioning of the breath testing machine, the Intoxilyzer 5000; and to establish that the hearing officer can vacate a driver's license suspension solely for subpoena non-compliance. ITD asserts that the requested information had no bearing on the actual evidence and was irrelevant to the outcome.

### a. Officer White's certification

Bell argues that the hearing officer's denial of his request for a subpoena to obtain Officer White's certification deprived him of the opportunity to present relevant evidence at his hearing and violated his right to due process. Bell does not cite to any authority for this proposition. Rather, he makes a general argument that because he had a right to confirm whether the officer conducting the breath test was currently certified to use the machine in question as required by the Idaho State Police Standard Operating Procedures (Revised 1/2009) (SOPs), the hearing officer's denial of his request amounts to a procedural due process violation.

In *Gibbar*, this Court construed I.C. § 18-8002A(7)(d), which requires tests for alcohol concentration to be conducted in accordance with the rules and regulations, as "permitting ALS petitioners to challenge the results of their BAC test by proving that the testing equipment was inaccurate or was not functioning properly because the state has adopted procedures that do not ensure accuracy and proper functioning." *Gibbar*, 143 Idaho at 947, 155 P.3d at 1186. Similarly, the statute permits ALS petitioners to challenge the results of their BAC test by proving that the testing officer was not certified, as the rules and regulations contemplate that the accuracy and reliability of breath test results is conditioned, at least in some respect, upon proof that the operator is certified to conduct breath tests with the machine in question.

10

While the hearing officer denied Bell's subpoena request to obtain the officer's certification, several of Bell's other requests were granted. As such, the hearing officer recognized that it had discretion to grant or deny Bell's requests. In denying Bell's request, the hearing officer determined that the officer's *certification card* was not clearly relevant. That determination was premised upon the fact that Officer White had already submitted a sworn affidavit indicating that his certification expired in December 2010. Had the hearing officer determined that *any* information regarding Officer White's certification was not clearly relevant, the hearing officer's conclusion would have been clearly erroneous. However, the hearing officer recognized that, although ALS petitioners have the ability to challenge their driver's license suspension through a number of different avenues, it does not give them carte blanche to demand all *potentially* relevant or confirmatory information. In this context, the record contained affirmative evidence regarding Officer White's certification and the hearing officer was within his discretion to deny the subpoena in the absence of any evidence in the record or from Bell that might suggest the existence of contrary information. As the hearing officer stated, the certification card was not "clearly relevant," in the face of the sworn statement and the absence of some indication that the certification card may provide more than simply cumulative evidence. A hearing officer "may exclude evidence that is irrelevant, unduly repetitious, or excludable on constitutional or statutory grounds." I.C. § 67-5251(1). Thus, the hearing officer correctly perceived the issue as one of discretion, acted within the boundaries of such discretion, and reached his decision by an exercise of reason. *See Sun Valley Shopping Center*, 119 Idaho at 94, 803 P.2d at 1000. Bell has not established a due process violation.

### b. Log sheets

Bell next argues that because the hearing officer did not grant his subpoena request for a sixty-day period of log sheets, and instead issued subpoenas for a four-day period of log sheets, the hearing officer abused his discretion, denied Bell due process, and violated this Court's holding in *Wheeler v. Idaho Transp. Dep't*, 148 Idaho 378, 223 P.3d 761 (Ct. App. 2009). Bell asserts that the entire sixty-day period of log sheets was necessary to determine whether the Intoxilyzer 5000 was accurate and properly functioning. The State contends that because Bell received all of the documents necessary to determine whether the Intoxilyzer 5000 was functioning properly on the day his test was conducted, his argument is moot.

11

Bell initially requested a subpoena for a copy of the testing instrument log sheets thirty days prior to and after Bell's arrest (from May 4, 2009, through July 4, 2009). The hearing officer, however, issued a subpoena for log sheets for June 3, 2009, through June 6, 2009. Bell requested that the hearing officer reconsider the issuance of the subpoena as the information was "specifically requested in order to determine whether the calibration of the Intoxilyzer machine at issue had been properly checked as required by Idaho law and standard operating procedures." The hearing officer did not respond to Bell's second request. Nevertheless, one hour before the initial administrative hearing on July 9, 2009, Bell received faxed copies of log sheets for April 28, 2009, through June 6, 2009. Following continuance of the hearing, Bell again requested a subpoena for a "copy of all documents reflecting any and all calibration checks performed from May 1, 2009 to July 13, 2009 on the breath-alcohol testing device used in this case." The hearing officer denied Bell's request concluding that the documents were not "clearly relevant in this matter."

As noted above in *Gibbar*, this Court construed I.C. § 18-8002A(7)(c) and (d) as "permitting ALS petitioners to challenge the results of their BAC test by proving that the testing equipment was inaccurate or was not functioning properly because the state has adopted procedures that do not ensure accuracy and proper functioning." *Gibbar*, 143 Idaho at 947, 155 P.3d at 1186. The rules governing alcohol testing provide that "[e]ach breath testing instrument shall be checked on a schedule established by the Department for accuracy with a simulator solution provided by the department or by a source approved by the department. These checks shall be performed according to a procedure established by the department." IDAPA § 11.03.01.013.05. The SOP provides that "[a] two sample calibration check using a 0.08 reference solution should be ran [sic] and results logged each time a solution is replaced with fresh solution. A 0.08 reference solution should be replaced with fresh solution approximately every 100 samples or every month, whichever comes first." SOP § 2.2.3.

The hearing officer found that Bell "was provided with the subpoenaed Instrument Operations Log albeit untimely (just prior to the scheduled hearing time), but a continuance was granted to allow Bell's legal counsel the opportunity to timely and properly prepare for the rescheduled hearing date." The hearing officer further found that "Bell submitted to evidentiary testing June 5, 2009, with the .08 and .20 solutions changes and calibration checks performed June 3, 2009, two days prior to Bell's evidentiary test, thus the Subpoena Duces Tecum issued

12

by the Hearing Officer for the period of June 3, 2009, through June 6, 2009, provided all the relevant information Bell needed." Indeed, Bell received log sheets for more than thirty days prior to his test. As discussed below, Bell has failed to demonstrate that the log sheets for any time period after June 6, 2009, are relevant to a determination of the proper functioning of the equipment at the time of his test and, thus, the hearing officer neither abused its discretion in denying the subpoena nor violated Bell's due process rights.[3] *See In re Mahurin,* 140 Idaho 656, 659, 99 P.3d 125, 128 (Ct. App. 2004) (upholding refusal to provide documents "absent any explanation of a need for records covering a more extended period").

### c. Documents related to subpoena compliance

Following the initial administrative hearing, Bell submitted several more requests for subpoenas regarding the source of the log sheets that were admitted into the record and for documents showing that non-subpoena compliance is a basis to vacate a license suspension. He contends that the hearing officer's decision violated due process, was made upon unlawful procedure, and exceeded statutory authority. He further asserts that had the information been disclosed, it would have shown the hearing officer's decision upholding Bell's driver's license suspension was not supported by substantial evidence in the record, and was arbitrary, capricious, and an abuse of discretion.

Pursuant to the rules governing administrative license suspensions, "in order to obtain a photocopy of a document which is public record, *relates to the petitioner hearing*, and is in the possession of the Department, petitioners shall make a written request to the Department." IDAPA 39.02.72.400.01 (emphasis added). "The Department shall attempt to provide the

---

[3] With respect to Bell's argument that *Wheeler* supports his assertion that he is entitled to "a complete set of logsheets and calibration checklists from the previous valid calibration check to the subsequent valid calibration check," his argument misapprehends the holding in that case. There, the Court determined that where a petitioner has established a violation of a regulation requiring that a procedure "should" be done, as is the case here, the test result is not rendered inadmissible per se. *Wheeler*, 148 Idaho at 384, 223 P.3d at 767. "Rather, in such case, the violation opens the door for the driver to attack the evidentiary test result through expert testimony or other evidence tending to prove that the violation rendered the result unreliable." *Id.* at 386, 223 P.3d at 769. In other words, even if Bell were to establish a violation of the "should" regulation, he would still need to establish that the evidentiary test was unreliable. *Wheeler* does not constitute an edict to hearing officers to grant subpoena requests for irrelevant information. Instead, it is a signal to petitioners that they must put on evidence to establish that the test results are unreliable.

13

requested copies prior to the hearing date, but failure to do so shall not be grounds for staying or rescinding a suspension." *Id.* Bell demanded information regarding how the documents received had been produced and copies of decisions in other cases in which discovery non-compliance had been the basis for vacating a suspension. This information bore no direct relation to the issues to be determined in Bell's hearing. The district court held:

> None of these requested documents would have provided any basis for establishing that Bell's license suspension should have been vacated under Idaho Code § 18-8002A(7), and none of these requested documents would have reduced the risk that Bell was erroneously deprived of his driver's license. Consequently, the hearing officer did not abuse his discretion or otherwise violate any due process right by refusing to subpoena these documents.

The hearing officer did not abuse his discretion or violate any due process right by denying production of information relating to subpoena and discovery compliance.

### 3. Admission of log sheets into the record

Bell contends that the hearing officer had no statutory authority to accept exhibits into the record, not offered by Bell, regardless of whether that information was obtained pursuant to a subpoena or not. Idaho Code § 67-5251(1) provides that "evidence may be admitted if it is of a type commonly relied upon by prudent persons in the conduct of their affairs." At the outset of a license suspension case, the law enforcement agency is required to submit a number of documents to ITD, including the notice of suspension, the sworn statement of the police officer, and a copy of any test results. IDAPA § 39.02.72.200.01. The hearing officer is required to make a record of the hearing proceedings, which consists of an audio recording, or another method of reporting that is authorized by the hearing officer, and any "[e]xhibits and other items of evidentiary nature." The initial information provided to ITD through the discovery procedures becomes part of the record.

As previously noted, a hearing officer "may, upon written request, issue subpoenas requiring the attendance of witnesses or the production of documentary or tangible evidence at a hearing." IDAPA § 39.02.72.300.01. However, there is nothing in the rules to suggest that the hearing officer may include in the hearing record information that has been forwarded to ITD in response to a discovery request or a subpoena. A hearing officer may take official notice of facts or material, as provided in I.C. § 67-5251(4), but the hearing officer here did not do so. Nonetheless, error in the admission of the log sheets was harmless. As we note herein, Bell has

14

not shown that information from log sheets outside the June 3, 2009, through June 6, 2009, time frame was relevant in this case. Nor has Bell demonstrated that the equipment was not functioning properly at the time Bell submitted to evidentiary testing. Bell's claim in this regard rested upon a contention that a failure to follow procedures at a date after Bell's test proved that the equipment was not working at the time of Bell's test, a claim which we reject herein. The burden of proof rested with Bell. The mere absence of those items from the record would not satisfy that burden. Thus, inclusion of the log sheets in the record, under these circumstances, was harmless.

###### 4. Delayed hearing and decision

Bell claims that the hearing officer violated his right to procedural due process by impermissibly postponing the hearing and by failing to issue a prompt decision. The Due Process Clauses of our state and federal constitutions prohibit the deprivation of a person's life, liberty, or property without due process of law. The suspension of a driver's license involves state action that adjudicates important interests of the licensee, and therefore a driver's license may not be taken away without procedural due process. *Dixon v. Love*, 431 U.S. 105, 112, 97 (1977); *Bell v. Burson*, 402 U.S. 535, 539, 91 (1971); *Ankney*, 109 Idaho at 3, 704 P.2d at 335. This interest is especially pronounced in a rural state like Idaho where public transportation, as an alternative to driving a private vehicle, is often unavailable. Nevertheless, an individual's interest in his driver's license is not so substantial as to require a pre-suspension hearing; a prompt post-suspension hearing will suffice. *Dixon*, 431 U.S. at 113; *Ankney*, 109 Idaho at 4, 5, 704 P.2d at 336, 337. However, an undue delay in holding a post-suspension hearing or issuing a decision may constitute a deprivation of due process. *Federal Deposit Ins. Corp. v. Mallen*, 486 U.S. 230, 242 (1988); *Jones v. City of Gary, Ind.*, 57 F.3d 1435, 1444 (7th Cir. 1995); *Padberg v. McGrath-McKechnie*, 203 F. Supp. 2d 261, 278 (E.D.N.Y. 2002), *aff'd* 60 F. App'x 861 (2d Cir. 2003). Delays in administrative proceedings may not violate due process if the person requesting the administrative proceeding contributed to the delay. *Jones*, 57 F.3d at 1444-45.

The Idaho Legislature provided in I.C. § 18-8002A a system that, if adhered to, is geared to yield a predeprivation adjudication of a challenge to a license suspension. That is, the legislative scheme allows time for a hearing and a decision from the hearing officer before the suspension takes effect. First, Idaho Code § 18-8002A(4)(b) provides that a driver whose license

15

has been seized will be given a thirty-day driving permit. The driver wishing to challenge a suspension may request a hearing within seven days, whereupon I.C. § 18-8002A(7) requires that a hearing be conducted within twenty days from the driver's request.[4] This scheme allows at least three days for the hearing officer to render a decision before a suspension takes effect. At the time of Bell's hearing, ITD's administrative rules provided that a hearing officer "shall issue the Findings of Fact, Conclusions of Law and Order prior to the expiration of the thirty (30) day temporary permit." IDAPA § 39.02.72.600.01 (2009).[5]

The first delay in Bell's administrative hearing from June 30, 2009, to July 9, 2009, was permitted by statute, requested by Bell, and granted to ensure sufficient time for Bell to review the subpoenaed documents. As noted above, Bell did not request that the subpoena compliance date be changed, but simply requested that the hearing be moved to a later date. We note, however, that the need to delay the hearing was due to the hearing officer setting the subpoena compliance date only one day before the scheduled hearing and not requiring production of the documents directly to Bell's attorney.

The second delay in Bell's administrative hearing from July 9, 2009, to July 23, 2009, was not specifically provided for by statute but was granted so that Bell could review subpoenaed materials that again were not supplied until the day of the hearing. Bell then again requested additional documents. However, as discussed below these documents, beyond those ordered by the hearing officer, were not relevant. After the hearing was finally conducted on July 23, 2009, the hearing officer issued a "request for additional time for evidence" leaving the record open for fifteen days or until case authority was received from Bell's attorney. Bell e-mailed copies of the requested cases to the hearing officer later that day, July 23, 2009. Two weeks later, upon request from the hearing officer, Bell resubmitted the cases with relevant sections highlighted. The hearing officer's decision was issued on September 14, 2009, approximately seventy days after Bell's thirty-day temporary driving permit had expired.

To determine whether a procedural delay violated due process, a court must apply the *Mathews* factors by examining "the importance of the private interest and the harm to this

---

[4]    The statute authorizes one ten-day extension of the hearing date for good cause, and such extension does not operate to stay the license suspension. I.C. § 18-8002A.

[5]    ITD subsequently deleted this provision from its rules.

interest occasioned by the delay; the justification offered by the Government for delay and its relation to the underlying governmental interest; and the likelihood that the interim decision may have been mistaken." *Mallen*, 486 U.S. at 242. Once again, Bell did not provide analysis of the *Mathews* factors in his opening brief on appeal. Moreover, Bell did not make this particular claim of a due process deprivation in the proceedings before the hearing officer. Bell never asserted that postponements of the hearing date or the delay in issuance of the hearing officer's decision constituted a deprivation of due process. Because no such objection was made, the hearing officer had no occasion to present any justification for the delay or explanation of how it may have served a governmental interest.

Although Bell's repeated requests for irrelevant discovery contributed somewhat to the hearing postponements, the delays involved here are troubling to this Court. The actions of the hearing officer evidence little regard for Bell's substantial interest in receiving a decision before, or at least promptly after, the deprivation of his license.[6] Nevertheless, because this constitutional issue was not raised to the hearing officer, we will not resolve it on appeal. *See Viveros v. State Dep't of Health & Welfare*, 126 Idaho 714, 716, 889 P.2d 1104, 1106 (1995).

**B.    Grounds for Vacating License Suspension**

Bell asserts that the hearing officer erred in failing to find a statutory basis for vacating the suspension. Bell argues that he satisfied his burden by demonstrating that the test equipment was not operated in accordance with the approval and certification standards, I.C. § 18-8002A(7)(d), and that he was not properly informed of the consequences of submitting to evidentiary testing, I.C. § 18-8002A(7)(e).

**1.    Accuracy and proper functioning of test equipment**

Bell argues that the Intoxilyzer 5000 was not accurate and properly functioning because the instrument was not checked and calibrated according to the established schedules and procedures and because the simulator solution used in the instrument was not supplied by an approved source. Bell first asserts that, although the documents demonstrate that the instrument was checked two days before his breath test, the evidence which he was able to submit does not

---

[6]    If delays of this magnitude occurred in a case where the driver ultimately prevailed, the driver would have suffered an irremediable and unacceptable loss of driving privileges for over three quarters of the minimum suspension term prescribed by I.C. § 18-8002A(4)(a) before issuance of a decision overturning the suspension.

17

show that the .08 check was properly completed at its next scheduled time. He therefore claims that he proved a violation of standard procedures. However, as the district court held, the failure to follow a procedure at some point in time does not demonstrate that the instrument was not working correctly at the time of Bell's test. Although Bell vehemently claims that a failure to properly conduct the required check at the next interval means a violation has been proven, he provides no proof therefrom that the check on June 3, which immediately preceded his test, was invalid or insufficient to demonstrate proper calibration and functioning at the time of his test two days later.

As to the solution provider, the only evidence which Bell submitted was an expired contract between RepCo Marketing, Inc., and the Idaho State Police. As noted, after the first continuance, Bell requested documents regarding the solution provider. The hearing officer denied the request, but provided the Idaho State Police Forensic Services Certificates of Analysis for simulator solution lot #8804 (.08) and lot #8101 (.20). These documents demonstrated that the solution was certified and current for evidentiary testing. The hearing officer inferred that if the lots had been certified, the solution came from an approved provider and that the expired contract was insufficient to demonstrate that the solutions were neither "provided by the Idaho State Police Forensic Services or approved vendor" as required by SOP 2.2.1. The district court determined that the solution provider was irrelevant to whether the instrument was functioning properly. Bell failed to demonstrate that an unauthorized solution source did or even would make a difference in whether the instrument was working properly at the time of his test. *See Wheeler*, 148 Idaho 378, 386, 223 P.3d 761, 769. Moreover, Bell misapprehends the language of the rule and regulation. The Idaho Administrative Procedures Act 2009 provides that simulator solutions used in the calibration checks be "provided by the department **or** by a source approved by the department." IDAPA § 11.03.01.013.05 (emphasis added). The SOP provides that the "Intoxilyzer 5000/EN calibration check is run using 0.08 and/or 0.20 reference solutions provided by the Idaho State Police Forensic Services **or** approved vendor and following the procedure outlined in the Intoxilyzer 5000/EN manual." SOP § 2.2.1 (emphasis added).

Bell argues on appeal that the adopted procedures do not ensure accuracy and proper functioning. He asserts that the standards are illusory based upon "recently performed wholesale revisions to the SOP's." These arguments are irrelevant to the issues presented to the hearing officer and were not preserved for review.

18

**2.** **Consequences of submitting to a breath test**

Although Bell does not deny that the standard advisory was given to him, he contends that Officer White nullified information given as part of the advisory during a conversation with Bell. First, Bell argues the officer's statement that refusal to provide a breath sample would result in a blood draw suggested that the State can force a blood draw in *all* cases, which is not true when a person is legitimately afraid of needles or when it is necessary to order someone to withdraw the blood. However, Officer White did not state that he would/could order someone to come and take Bell's blood and there is no indication Bell was afraid of needles. Second, Bell asserts that Officer White "was in effect telling Mr. Bell he *had* to submit to evidentiary testing." Officer White did not state that Bell had to *submit* to testing. Instead, he said that Bell could provide testing voluntarily or a sample would be taken without his voluntary submission. While this may well have put Bell in a coercive situation, the officer did not contradict the advisory or law by stating that Bell "had" to submit or could not refuse. The law allows the refusal to be overcome by use of reasonable force to withdraw a blood sample involuntarily. *State v. Woolery*, 116 Idaho 368, 371-74, 775 P.2d 1210, 1213-16 (1989). Finally, Bell claims that the officer indicated to Bell "that a fist fight may be possible." Bell's statement, "I'm not into a fist fight tonight," to which the officer replied "Good. Either [sic] am I" simply does not state or imply that the officer was threatening a fist fight in order to obtain an evidentiary test.

**C.** **Reliance Upon Officer's Affidavit**

Officer White submitted an affidavit upon which the hearing officer relied. Bell attached a document to his brief on appeal to the district court which indicated that Officer White was separated from the Boise Police Department after certain unrelated policy violations. The document also stated that during the investigation Officer White gave "inconsistent statements." From this information, Bell argues that Officer White "is simply not credible." Further, Bell claims that because a county prosecutor representing the State knew of the information regarding Officer White, ITD, a political subdivision of the State, had actual or constructive knowledge of that information. He asserts that the hearing officer should not have relied on Officer White's affidavit and ITD should have informed Bell of the past false statements.

Bell failed to cite any law in support of his position regarding actual or constructive knowledge on the part of ITD. A party waives an issue on appeal if either authority or argument is lacking. *State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996). Bell states that the

hearing officer's reliance on Officer White's affidavit was a violation of his due process rights, in excess of statutory authority, based upon unlawful procedure, unsupported by substantial evidence, arbitrary, capricious, and an abuse of discretion. However, Bell provides no authority for any of these conclusions. There is no evidence in the record that ITD or the hearing officer had any actual knowledge of the situation involving Officer White. Bell has failed to support his claim that ITD could be legally charged with constructive knowledge. Even if the document suggests that Officer White was untruthful in the internal investigation, nothing in the record suggests that Officer White was untruthful in his affidavit in this case.

## III.

## CONCLUSION

Bell has failed to demonstrate that the hearing officer abused his discretion or violated Bell's due process rights in regard to the requested information, discovery process, or conduct of the hearing and decision. Bell did not establish grounds for vacating the suspension of his license. Bell has failed to demonstrate error in the hearing officer's reliance on Officer White's affidavit. Therefore, the district court's order affirming the ITD order upholding the suspension of Bell's driver's license is affirmed.

Judge LANSING and Judge GUTIERREZ **CONCUR.**