IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 39886

| IN THE MATTER OF THE DRIVER'S LICENSE SUSPENSION OF GEORGE JAY BEYER, JR. | ) ) ) | |
|---|---|---|
| GEORGE JAY BEYER, JR., | ) ) | **2013 Opinion No. 32** |
| Petitioner-Appellant, | ) ) | **Filed: June 4, 2013** |
| v. | ) ) | **Stephen W. Kenyon, Clerk** |
| STATE OF IDAHO, TRANSPORTATION DEPARTMENT, | ) ) ) | |
| Respondent. | ) ) ) | |

Appeal from the District Court of the Second Judicial District, State of Idaho, Nez Perce County. Hon. Jeff M. Brudie, District Judge.

Decision of the district court, affirming an administrative order suspending a driver's license for failing breath alcohol concentration test, <u>affirmed</u>.

Clark & Feeney, Lewiston, for appellant. Charles M. Stroschein argued.

Hon. Lawrence G. Wasden, Attorney General; Edwin L. Litteneker, Special Deputy Attorney General, Lewiston, for respondent. Edwin L. Litteneker argued.

_____

MELANSON, Judge

George Jay Beyer, Jr. appeals from the district court's decision upon judicial review affirming the Idaho Transportation Department's order suspending Beyer's driver's license after he failed a breath alcohol concentration test. For the reasons set forth below, we affirm.

## I.

## FACTS AND PROCEDURE

Beyer was stopped in November 2010 for making an illegal right turn while driving a vehicle. I.C. § 49-644(1). The officer who stopped Beyer noticed a smell of alcohol coming from the vehicle and that Beyer's eyes were glassy and bloodshot. Beyer admitted to consuming alcohol prior to driving and the officer conducted standard field sobriety tests. After observing Beyer's performance, the officer arrested Beyer for driving under the influence. A breath test

showed that Beyer's breath alcohol concentration was above the legal limit. Beyer was served with a notice of administrative suspension of his driver's license due to his failure of the breath test. Following his arrest, Beyer requested a hearing before a hearing officer from the Idaho Transportation Department (ITD) to contest the license suspension. At the hearing, Beyer argued that his driver's license should not be suspended. The hearing officer sustained the suspension of Beyer's license. Beyer appealed to the district court. The district court affirmed the hearing officer's decision. Beyer again appeals.[1]

## II.

## STANDARD OF REVIEW

The Administrative License Suspension statute, I.C. § 18-8002A, requires that the ITD suspend the driver's license of a driver who has failed a blood alcohol concentration test administered by a law enforcement officer. A person who has been notified of such an administrative license suspension (ALS) may request a hearing before a hearing officer designated by the ITD to contest the suspension. I.C. § 18-8002A(7). The hearing officer must uphold the suspension unless he or she finds, by a preponderance of the evidence, that the driver has shown one of several grounds, enumerated in I.C. § 18-8002A(7)(a)-(e), for vacating the suspension. The burden of proof rests upon the driver to prove any of the grounds to vacate the suspension. I.C. § 18-8002A(7); *Kane v. State, Dep't of Transp.*, 139 Idaho 586, 590, 83 P.3d 130, 134 (Ct. App. 2003). Once the driver has made an initial prima facie showing of evidence proving some basis for vacating the suspension, the burden shifts to the state to rebut the evidence presented by the driver. *See Kane*, 139 Idaho at 590, 83 P.3d at 134.

A license suspension may be vacated if "the peace officer did not have legal cause to stop the person." I.C. § 18-8002A(7)(a). A license suspension may also be vacated if the tests for alcohol concentration "administered at the direction of the peace officer were not conducted in accordance with the requirements" of I.C. § 18-8004(4). I.C. § 18-8002A(7)(d). Pursuant to I.C. § 18-8004(4), the Idaho State Police (ISP) is charged with promulgating standards for administering tests for breath alcohol content. *State v. DeFranco*, 143 Idaho 335, 337, 144 P.3d 40, 42 (Ct. App. 2006). To carry out the authority conferred by that statute, the ISP issued

---

[1]     A stay of Beyer's license suspension was ordered pending the administrative hearing and written findings of fact and conclusions of law and order issued by the hearing officer. A stay was also ordered pending judicial review.

operating manuals as well as Standard Operating Procedure (SOP) establishing procedures for the maintenance and operation of breath testing equipment.[2] *In re Mahurin*, 140 Idaho 656, 658, 99 P.3d 125, 127 (Ct. App. 2004). Noncompliance with these procedures is a ground for vacating an ALS under I.C. § 18-8002A(7)(d). *Mahurin*, 140 Idaho at 658-59, 99 P.3d at 127-28. The ISP SOP for breath alcohol testing provide that, "prior to evidentiary breath alcohol testing, the subject/individual should be monitored for at least fifteen (15) minutes . . . . During the monitoring period the subject/individual should not be allowed to smoke, drink, eat, or belch/burp/vomit/regurgitate." SOP 6.1 (Nov. 1, 2010). The SOP also provides that, "during the monitoring period, the Operator must be alert for any event that might influence the accuracy of the breath alcohol test." *Id.* at 6.1.4.[3]

An ITD administrative hearing officer's decision to uphold the suspension of a person's driver's license is subject to challenge through a petition for judicial review. I.C. § 18-8002A(8); *Kane*, 139 Idaho at 589, 83 P.3d at 133. The Idaho Administrative Procedures Act (IDAPA) governs judicial review of the ITD decisions to deny, cancel, suspend, disqualify, revoke, or restrict a person's driver's license. *See* I.C. §§ 49-201, 49-330, 67-5201(2), 67-5270. In an appeal from the decision of the district court acting in its appellate capacity under the IDAPA, this Court reviews the agency record independently of the district court's decision. *Marshall v. Idaho Dep't of Transp.*, 137 Idaho 337, 340, 48 P.3d 666, 669 (Ct. App. 2002). This Court does not substitute its judgment for that of the agency as to the weight of the evidence presented. I.C. § 67-5279(1); *Marshall*, 137 Idaho at 340, 48 P.3d at 669. This Court instead defers to the agency's findings of fact unless they are clearly erroneous. *Castaneda v. Brighton Corp.*, 130 Idaho 923, 926, 950 P.2d 1262, 1265 (1998); *Marshall*, 137 Idaho at 340, 48 P.3d at 669. In other words, the agency's factual determinations are binding on the reviewing court, even where there is conflicting evidence before the agency, so long as the determinations are supported by substantial and competent evidence in the record. *Urrutia v. Blaine County, ex rel. Bd. of*

---

[2]    In this case, Beyer makes no argument regarding applicable manuals. These manuals have changed over time. This Court has previously looked to these manuals for information regarding the requirements of the monitoring period. *See State v. Carson*, 133 Idaho 451, 453, 988 P.2d 225, 227 (Ct. App. 1999). The focus here appears to be on the requirements in the SOP.

[3]    The current SOP, effective January 2013, has changed the "must" in 6.1.4 to "should."

3

*Comm'rs*, 134 Idaho 353, 357, 2 P.3d 738, 742 (2000); *Marshall*, 137 Idaho at 340, 48 P.3d at 669. Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. *Kinney v. Tupperware Co.*, 117 Idaho 765, 769, 792 P.2d 330, 334 (1990). Substantial evidence is more than a scintilla, but less than a preponderance. *Id.*

This Court may overturn an agency's decision where its findings, inferences, conclusions, or decisions: (a) violate statutory or constitutional provisions; (b) exceed the agency's statutory authority; (c) are made upon unlawful procedure; (d) are not supported by substantial evidence in the record; or (e) are arbitrary, capricious, or an abuse of discretion. I.C. § 67-5279(3). The party challenging the agency decision must demonstrate that the agency erred in a manner specified in I.C. § 67-5279(3) and that a substantial right of that party has been prejudiced. *Price v. Payette County Bd. of County Comm'rs*, 131 Idaho 426, 429, 958 P.2d 583, 586 (1998); *Marshall*, 137 Idaho at 340, 48 P.3d at 669.

## III.

## ANALYSIS

### A.    Legal Cause for Stop

Beyer argues that the arresting officer lacked legal cause to stop Beyer's vehicle. A traffic stop by an officer constitutes a seizure of the vehicle's occupants and implicates the Fourth Amendment's prohibition against unreasonable searches and seizures. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). Under the Fourth Amendment, an officer may stop a vehicle to investigate possible criminal behavior if there is a reasonable and articulable suspicion that the vehicle is being driven contrary to traffic laws. *United States v. Cortez*, 449 U.S. 411, 417 (1981); *State v. Flowers*, 131 Idaho 205, 208, 953 P.2d 645, 648 (Ct. App. 1998). The reasonableness of the suspicion must be evaluated upon the totality of the circumstances at the time of the stop. *State v. Ferreira*, 133 Idaho 474, 483, 988 P.2d 700, 709 (Ct. App. 1999). The reasonable suspicion standard requires less than probable cause but more than mere speculation or instinct on the part of the officer. *Id.* An officer may draw reasonable inferences from the facts in his or her possession, and those inferences may be drawn from the officer's experience and law enforcement training. *State v. Montague*, 114 Idaho 319, 321, 756 P.2d 1083, 1085 (Ct. App. 1988). Suspicion will not be found to be justified if the conduct observed by the officer fell

4

within the broad range of what can be described as normal driving behavior. *Atkinson*, 128 Idaho at 561, 916 P.2d at 1286.

Beyer asserts that his conduct fell within the broad range of what can be described as normal driving behavior. We first note that failure to do what is required by the statute cannot be said to fall within the normal range of driving behavior even if it is shown that the statute is frequently violated. Beyer argues that I.C. § 49-644(1) does not require a driver to turn into the right, or nearest lane, rather than drive directly into the left lane of a four-lane road consisting of two lanes in each direction. The interpretation of a statute is an issue of law over which we exercise free review. *Aguilar v. Coonrod*, 151 Idaho 642, 649-50, 262 P.3d 671, 678-79 (2011). Such interpretation must begin with the literal words of the statute; those words must be given their plain, usual, and ordinary meaning; and the statute must be construed as a whole. *Verska v. Saint Alphonsus Reg'l Med. Ctr.*, 151 Idaho 889, 893, 265 P.3d 502, 506 (2011). It is well established that, where statutory language is unambiguous, legislative history and other extrinsic evidence should not be consulted for the purpose of altering the clearly expressed intent of the legislature. *Id*. Only where a statute is capable of more than one conflicting construction is it said to be ambiguous and invoke the rules of statutory construction. *L & W Supply Corp. v. Chartrand Family Trust*, 136 Idaho 738, 743, 40 P.3d 96, 101 (2002). Idaho Code Section 49-644(1) requires that, when the driver of a vehicle intends to make a right turn, both the approach for the turn and the turn must be made as close as practicable to the right-hand curb or edge of the roadway. We conclude this language unambiguously requires that a driver turn into the right, or nearest lane, rather than drive across the nearest lane and directly into the left lane of a four-lane road consisting of two lanes in each direction.

Beyer bore the burden of proving by a preponderance of the evidence that the officer lacked legal cause to stop Beyer's vehicle. A preponderance of the evidence means that the evidence shows something to be more probably true than not. *Oxley v. Medicine Rock Specialties, Inc.*, 139 Idaho 476, 481, 80 P.3d 1077, 1082 (2003). Therefore, Beyer had to show that it was more probably true than not that he did not violate I.C. § 49-644(1). In the arresting officer's probable cause affidavit, the officer explained that he stopped Beyer for making an illegal right turn into the wrong lane of a four-lane road. The officer testified at the ALS hearing that he observed Beyer drive directly into the left lane rather than turning into the right lane of the four-lane road. The audio recording of the stop of Beyer's vehicle reveals that the arresting

5

officer informed Beyer he was stopped for pulling directly into the left lane rather than the right lane. As determined above, this driving behavior constitutes a violation of I.C. § 49-644(1). Beyer testified that he turned into the right lane and then merged into the left lane and did not recall driving directly into the left lane. In its findings of fact and conclusions of law, the hearing officer determined the arresting officer's affidavit and testimony and Beyer's testimony were equally contradictive and given equal weight. Thus, the hearing officer concluded Beyer had not met his burden of proof. Again, this Court does not substitute its judgment for that of the agency as to the weight of the evidence presented. I.C. § 67-5279(1); *Marshall*, 137 Idaho at 340, 48 P.3d at 669. We conclude there is substantial evidence in the record from which to conclude that Beyer failed to show by a preponderance of the evidence that he did not violate I.C. § 49-644(1).[4]

**B. Fifteen-Minute Observation Period**

Beyer also argues that the arresting officer did not properly conduct the fifteen-minute observation period prior to evidentiary breath alcohol testing. This Court addressed the requirement of the fifteen-minute monitoring period in *Bennett v. State, Dep't of Transp.*, 147 Idaho 141, 206 P.3d 505 (Ct. App. 2009). We noted that the purpose of the monitoring period is to rule out the possibility that alcohol or other substances have been introduced into the subject's mouth from the outside or by belching or regurgitation. *Id.* at 144, 206 P.3d at 508; *State v. Carson*, 133 Idaho 451, 453, 988 P.2d 225, 227 (Ct. App. 1999). To satisfy the monitoring requirement, the level of surveillance "must be such as could reasonably be expected to accomplish" that purpose. *Bennett*, 147 Idaho at 144, 206 P.3d at 508. Furthermore, in

---

[4] In its findings of fact and conclusions of law, after concluding that Beyer did not meet his burden of proof, the hearing officer also concluded that the arresting officer had legal cause to stop Beyer's vehicle. However, having found that Beyer failed to meet his burden of proof, it was unnecessary for the hearing officer to further conclude that the officer had legal cause to stop Beyer's vehicle. The distinction between finding that Beyer did not meet his burden of proof and concluding that the arresting officer had legal cause to stop Beyer's vehicle is subtle but important in this case because no in-person hearing was held and Beyer's version of events is different from the officer's. Presumably, in order for the hearing officer to affirmatively find that the arresting officer had legal cause to stop Beyer's vehicle (as opposed to ruling that Beyer had not met his burden of proof to show that the stop was not supported by legal cause), the hearing officer would have been required to find the arresting officer's testimony more credible than Beyer's testimony. The hearing officer's finding was superfluous, but it does seem to be inconsistent with his assertion that he gave equal weight to the testimony.

6

*DeFranco*, this Court commented that the fifteen-minute monitoring period is not an onerous burden and that "this foundational standard ordinarily will be met if the officer stays in close physical proximity to the test subject so that the officer's senses of sight, smell and hearing can be employed." *DeFranco*, 143 Idaho at 338, 144 P.3d at 43. Therefore, so long as the officer is continually in a position to use his or her senses, not just sight, to determine that the defendant did not belch, burp or vomit during the monitoring period, the observation complies with the training manual instructions. *Bennett*, 147 Idaho at 144, 206 P.3d at 508. *See also Carson*, 133 Idaho at 453, 988 P.2d at 227 (holding that the arresting officer's ability to supplement his visual monitoring of Carson with his other senses was substantially impaired by numerous sources of noise, the officer's own hearing impairment, and his position facing away from Carson while transporting him during the monitoring period).

Beyer asserts that the arresting officer did not properly conduct the fifteen-minute observation period because the officer was distracted by traffic and the tow truck driver who arrived to take Beyer's vehicle. The hearing officer noted that, pursuant to *State v. Remsburg*, 126 Idaho 338, 340, 882 P.2d 993, 995 (Ct. App. 1994), the operator of the breath testing instrument is not required to stare continuously at the driver for the full fifteen-minute monitoring period. The hearing officer found that, even when the officer's attention was diverted during the monitoring period, including yelling to the tow truck driver, Beyer failed to provide any proof that the arresting officer's other senses than sight were unable to assist in monitoring Beyer.

The roadside stop of Beyer's vehicle, which occurred very early in the morning, was captured on the arresting officer's dashboard video camera. While the officer is not always visible in the video, he was picked up by the microphone during the entire observation period. Beyer is visible during the entire observation period.[5] The officer had Beyer sit in the back of the patrol vehicle with his legs extended outside the vehicle on the side of the vehicle furthest from the roadway. The officer testified that he at all times remained within approximately two feet of Beyer. Beyer did not dispute this testimony. The testimony of the officer is consistent

---

[5] The officer began one fifteen-minute observation period but, with only minutes to go, Beyer informed the officer that he would not submit to breath testing. The officer informed Beyer that he would have to have blood drawn. Beyer decided to submit to breath testing, at which point the officer began another fifteen-minute observation period.

with the video because Beyer and the officer can be heard having regular conversation at a voice level consistent with them being in close proximity to one another. At no time did the officer or Beyer raise their voices to be heard over the very minimal traffic nor did the traffic noise appear to be loud enough to interfere with any of the officer's senses or his ability to observe Beyer. When the tow truck arrived and the driver got out of the tow truck, the officer yelled for the driver to not take Beyer's vehicle yet. This took less than ten seconds. Beyer offered no evidence that the officer's senses, other than sight, were unable to assist in monitoring Beyer while he yelled at the tow truck driver. We conclude the hearing officer's finding that the arresting officer properly conducted the fifteen-minute observation period was supported by substantial evidence in the record.[6]

## C.    Due Process

Beyer also argues that he was afforded no due process in the ALS hearing. Because the suspension of issued driver's licenses involves state action that adjudicates important interests of the licensees, drivers' licenses may not be taken away without due process. *Dixon v. Love*, 431 U.S. 105, 112 (1977); *State v. Ankney*, 109 Idaho 1, 3-4, 704 P.2d 333, 335-36 (1985); *In re Gibbar*, 143 Idaho 937, 945, 155 P.3d 1176, 1184 (Ct. App. 2006). Beyer correctly asserts that this Court should focus on *Mathews v. Eldridge*, 424 U.S. 319 (1976) in determining whether an administrative proceeding satisfies procedural due process. In that case, the United States Supreme Court stated that resolution of the issue whether the administrative procedures provided in a particular case are constitutionally sufficient requires consideration of three distinct factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the

---

[6]    We note, however, that roadside monitoring inherently presents environmental impediments and distractions which, without due care, may sufficiently compromise the adequacy of the monitoring so as to void the test results. As we have previously cautioned, "It should be noted that although constant visual contact is not required, the rule's flexibility is not an open invitation for law enforcement officers to be inattentive or to leave suspects out of their sight for any appreciable period of time." *Wilkinson v. State, Dep't of Transp.*, 151 Idaho 784, 788, 264 P.3d 680, 684 (Ct. App. 2011). We continue to counsel that "officers should attend to suspects to the best of their ability, including visual observation, throughout the entire monitoring period if at all possible." *Id.* Here, as we have noted, traffic was light and there were very few distractions.

function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews*, 424 U.S. at 334-35.

Beyer argues that he was afforded no due process in the ALS hearing because a subpoena issued at his request did not require production of a copy of the video of the stop of his vehicle until the very the day of the hearing. However, on the day of the hearing, the hearing officer offered to enter a stay of Beyer's license suspension and leave the record open for fifteen days to allow counsel to submit additional evidence after reviewing the video. At the hearing, counsel for Beyer stated:

> I think that's fair, because my client wouldn't be necessarily prejudiced if there was a stay and the record was held open.
> . . . .
> So if that's the resolution that we can reach, then as I said, I don't think my client's prejudiced if there's a stay put into place pending my review of the DVD.

Thereafter, the hearing officer entered a stay of Beyer's license suspension and left the record open for fifteen days. The doctrine of invited error applies to estop a party from asserting an error when his or her own conduct induces the commission of the error. *Thompson v. Olsen*, 147 Idaho 99, 106, 205 P.3d 1235, 1242 (2009). One may not complain of errors one has consented to or acquiesced in. *Id.* In short, invited errors are not reversible. *Id.* Thus, given that Beyer affirmatively accepted the hearing officer's remedy at the time of the hearing, even if the hearing officer erred by not requiring the video to be produced until the day of the hearing, Beyer cannot complain of that error.[7]

Beyer finally argues that the hearing officer deprived Beyer of due process because his request for an in-person hearing was denied. Idaho Code Section 18-8002A(7) provides that "the department may conduct all hearings by telephone if each participant in the hearing has an opportunity to participate in the entire proceeding while it is taking place." Beyer, his counsel,

---

[7] We have previously criticized a hearing officer's practice of issuing subpoenas requiring compliance on the day before the scheduled hearing. We stated that such a practice is "strongly discouraged," but that it does not amount to a per se violation of procedural due process. *Bell v. Idaho Transp. Dep't*, 151 Idaho 659, 666 n.2, 262 P.3d 1030, 1037 n.2 (Ct. App. 2011). The ALS hearing in this case was held prior to our decision in *Bell* but, here, compliance was ordered on the *day of the hearing*. We continue to strongly discourage this practice. We see no reason for this practice except to cause a disadvantage to the driver who has the burden of proof at the ALS hearing.

and the arresting officer were allowed to participate in the entire proceeding. The hearing officer heard testimony from the arresting officer and Beyer. However, Beyer argues that, because the testimony of the officer and Beyer conflicted, the credibility of the officer was at issue and, therefore, an in-person hearing was required pursuant to *Gibbar*, 143 Idaho at 949, 155 P.3d at 1188. In that case, Gibbar argued that his telephone hearing violated his due process rights. *Id*. Gibbar implied that witness credibility was always at issue and that in-person hearings were required to adequately cross-examine witnesses. However, the testimony in Gibbar's case was uncontested. Specifically, Gibbar admitted to drinking the day of his arrest and indicated that he was baling hay, which may have caused him to have bloodshot eyes. Gibbar's testimony did not contradict the testimony of the officer, who testified that Gibbar smelled of alcohol and had bloodshot eyes. Gibbar corroborated the testimony of the officer that he crossed the centerline of the street while driving by explaining that there was a pedestrian on the side of the street. Rather than stating that there was no pedestrian, the officer indicated there may have been a pedestrian. Therefore, this Court determined that the telephone hearing posed no risk of erroneous deprivation of Gibbar's driver's license. *Id.*

While Beyer asserts *Gibbar* stands for the proposition that, in all cases where credibility is in issue there must be an in-person hearing provided upon request, *Gibbar* should not be read so broadly. Rather, because Gibbar's argument was undermined by the lack of conflicting testimony, we did not reach the question of whether an in-person hearing is always required upon request when credibility is in issue. We also need not reach that issue in this case. Again, this Court may overturn an agency's decision where its findings, inferences, conclusions, or decisions violate constitutional provisions. I.C. § 67-5279(3). However, the party challenging the agency decision must demonstrate that the agency violated a constitutional provision *and* that a substantial right of that party has been prejudiced. *Price*, 131 Idaho at 429, 958 P.2d at 586; *Marshall*, 137 Idaho at 340, 48 P.3d at 669. With respect to prejudice suffered, Beyer appears only to assert that he would have been more effectively able to cross-examine the arresting officer at an in-person hearing after having reviewed the video of the stop of his vehicle. Thus, his assertion that he suffered prejudice is related solely to the absence of the video recording at the hearing. As addressed above, the doctrine of invited error precludes Beyer from asserting any prejudice from the fact that the hearing officer did not require the video to be produced until the day of the hearing. Even so, Beyer argues:

> Clearly, having a video of the entire contact with Mr. Beyer would have been immensely important for the preparation of issues and preparation for examination of the arresting officer. . . . The video shows all sorts of things that Counsel for Mr. Beyer would not have been aware [of], but for the video. Please remember that the arresting officer . . . got to review the video before the hearing, but Counsel for Mr. Beyer did not.
>
> The District Court says that [Beyer] has failed to show how he was prejudiced. A video shows substantial information not available from any other source. Why have a due process hearing when a driver is just shooting in the dark as to issues and facts.

By these statements, Beyer does not indicate what additional questions he would have asked the officer or what evidence he may have produced had he been able to ask the arresting officer questions regarding the video at an in-person hearing. Indeed, the arresting officer's testimony did not substantially differ from what is shown on the video. Accordingly, Beyer has failed to demonstrate that he suffered any prejudice due to the hearing officer's denial of his request for an in-person hearing.

## IV.

## CONCLUSION

There is substantial evidence in the record from which to conclude Beyer failed to show by a preponderance of the evidence that he did not violate I.C. § 49-644(1). There is substantial evidence in the record to support the hearing officer's finding that the arresting officer properly conducted the fifteen-minute observation period. The doctrine of invited error precludes Beyer from complaining that the hearing officer erred by not requiring the video of the stop of Beyer's vehicle to be produced until the day of the ALS hearing. Beyer has failed to show that he was prejudiced by the denial of his request for an in-person hearing. Therefore, we affirm the district court's decision upon judicial review affirming the ITD's order suspending Beyer's driver's license. Costs, but not attorney fees, are awarded on appeal to the respondent, State of Idaho.

Judge LANSING and Judge GRATTON, **CONCUR.**

11