# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 47550

| | |
|---|---|
| In the Matter of the Guardianship of John Doe, A Minor Child. ) | |
| JON and RONDA NICHOLSON, ) | |
| ) | **Opinion Filed: April 14, 2020** |
| Petitioners-Respondents, ) | |
| ) | **Karel A. Lehrman, Clerk** |
| v. ) | |
| ) | |
| BRITTANY BENNETT, ) | |
| ) | |
| Respondent-Appellant. ) | |
| ) | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Owyhee County. Hon. Shane Darrington, Magistrate.

Judgment appointing co-guardians, <u>affirmed</u>; order granting attorney fees, <u>vacated</u>.

Chaney Law Office PLLC; Gregory D. Chaney, Caldwell, for appellant.

MSBT Law, Chartered; Frances Ruth Stern, Boise, for respondents.

_____

HUSKEY, Chief Judge

Brittany Bennett appeals from the magistrate court's judgment appointing Jon and Ronda Nicholson (the Nicholsons) as co-guardians of T.J.T.-M. Bennett argues a variety of reasons the magistrate court erred when it appointed the Nicholsons as co-guardians of T.J.T.-M. Bennett also claims the magistrate court erred when it denied Bennett's motion to reconsider and awarded attorney fees to the Nicholsons.[1] For the reasons set forth below, we affirm the magistrate court's judgment appointing the Nicholsons as co-guardians. However, we vacate the magistrate court's judgment awarding attorney fees and costs.

---

[1] Bennett also appeals from the magistrate court's denial of her motion for leave to appeal directly to the Supreme Court. Although the magistrate court denied Bennett's motion for leave to appeal on October 31, 2019, the Supreme Court granted Bennett's motion for a permissive appeal on January 2, 2020. The issue is therefore moot.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

Bennett is the biological mother of the minor child, T.J.T.-M. Jon Nicholson is the paternal great uncle and Ronda Nicholson is the paternal great aunt of T.J.T.-M. On March 1, 2019, the Nicholsons filed a temporary guardianship action involving T.J.T.-M. which the magistrate court granted. On June 4, 2019, the Nicholsons filed a second guardianship petition. The magistrate court held a hearing on June 12, 2019, where it heard testimony from various witnesses regarding T.J.T.-M. and found that temporary guardianship was appropriate for the health, safety, and welfare of T.J.T.-M.

A permanent guardianship hearing was held on September 11, 2019. The magistrate court determined that appointing the Nicholsons as co-guardians was in the best interests of T.J.T.-M. because of Bennett's inability to provide a stable home environment pursuant to Idaho Code § 16-1603(1). The magistrate court entered the order on October 1, 2019, and that same day, Bennett filed a motion to reconsider the evidentiary decisions, for a new trial, and for the magistrate court to amend its findings. On October 13, 2019, Bennett also filed a motion for leave to appeal directly to the Idaho Supreme Court.

The magistrate court held a hearing on October 29, 2019, regarding Bennett's motion to reconsider. On October 31, 2019, the magistrate court denied Bennett's motion for leave to appeal directly to the Supreme Court and Bennett's motion to reconsider, for a new trial, and for amendment of findings. The magistrate court awarded the Nicholsons attorney fees and costs. Bennett timely appeals.

# II.

## STANDARD OF REVIEW

An appellate court will not set aside a magistrate court's factual findings so long as they are supported by substantial, competent evidence. *In re Doe*, 156 Idaho 682, 687, 330 P.3d 1040, 1045 (2014). Substantial, competent evidence is evidence a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245, 220 P.3d 1062, 1064 (2009). The Idaho Supreme Court explained:

> This Court is required to conduct an independent review of the magistrate court record, but must draw all reasonable inferences in favor of the magistrate court's judgment because the magistrate court has the opportunity to observe witnesses'

2

demeanor, to assess their credibility, to detect prejudice or motive, and to judge the character of the parties.

*Doe*, 156 Idaho at 687, 330 P.3d at 1045.

The paramount issue in guardianship proceedings is the best interests of the child. *In re Guardianship of Copenhaver*, 124 Idaho 888, 892, 865 P.2d 979, 983 (1993). The best interests of the child is "the primary factor in the determination whether to appoint, and whom to appoint, as a guardian for such child." I.C. § 15-5-204; *In re Guardianship of Doe*, 157 Idaho 750, 757, 339 P.3d 1154, 1161 (2014).

## III.

## ANALYSIS

Bennett claims the magistrate court erred in five ways when it appointed the Nicholsons as co-guardians of T.J.T.-M.:[2] (1) The magistrate court should have applied the standard set forth in I.C. § 32-1013; (2) the magistrate court took judicial notice of the testimony from the June 12 hearing without identifying each piece of testimony or fact of which the court was taking notice; (3) the magistrate court applied res judicata to the issue presented in the September 11 hearing based on the testimony adduced at the June 12 hearing; (4) the evidence presented was not sufficient as a matter of law and fact to support the magistrate court's judgment appointing the Nicholsons as co-guardians; and (5) the magistrate court awarded attorney fees to the Nicholsons.

**A.     Idaho Code § 32-1013 Does Not Apply**

Bennett argues I.C. § 32-1013 applies to this case, and because the magistrate court did not apply this statute, it used the wrong legal standard when analyzing the evidence. According to Bennett, the guardianship proceedings were a State action that implicated her fundamental right to parent, and thus, the magistrate court failed to consider whether the proceedings were established by clear and convincing evidence and whether the guardianship was the least restrictive means to further a compelling governmental interest.

The interpretation of a statute is an issue of law over which we exercise free review. *Aguilar v. Coonrod*, 151 Idaho 642, 649-50, 262 P.3d 671, 678-79 (2011). Such interpretation must begin with the literal words of the statute; those words must be given their plain, usual, and

_____

[2]     Historically, co-guardianships were not allowed in Idaho. *See Doe v. Doe*, 160 Idaho 311, 314, 372 P.3d 366, 369 (2016). However, this restriction has changed such that the current version of Idaho Code § 15-5-207 allows for the appointment of co-guardians. The magistrate court explained this history and cited to this code section in its findings.

ordinary meaning; and the statute must be construed as a whole. *Verska v. Saint Alphonsus Reg'l Med. Ctr.*, 151 Idaho 889, 893, 265 P.3d 502, 506 (2011). It is well established that where statutory language is unambiguous, legislative history and other extrinsic evidence should not be consulted for the purpose of altering the clearly expressed intent of the legislature. *Id.* Only where a statute is capable of more than one conflicting construction is it said to be ambiguous and invoke the rules of statutory construction. *L & W Supply Corp. v. Chartrand Family Trust*, 136 Idaho 738, 743, 40 P.3d 96, 101 (2002).

Here, the issue is whether I.C. § 32-1013 applies. Idaho Code § 32-1013 states:

(1) Neither the state of Idaho, nor any political subdivision thereof, may violate a parent's fundamental and established rights protected by this act, and any restriction of or interference with such rights shall not be upheld unless it demonstrates by clear and convincing evidence that the restriction or interference is both:
  (a) Essential to further a compelling governmental interest; and
  (b) The least restrictive means available for the furthering of that compelling governmental interest.

The plain language of the statute applies only to "the state of Idaho" and "any political subdivision thereof." Here, unlike a termination case in which the state of Idaho initiates an action, the Nicholsons were the petitioners in this case. The Nicholsons are not the State or a political subdivision of the State. Although the magistrate court entered a judgment appointing the Nicholsons co-guardians of T.J.T.-M., such a ruling by the magistrate court does not convert an action initiated by private citizens into a State action. Because this case does not involve a State action, I.C. § 32-1013 does not apply, as Bennett argues on appeal. As a result, we need not address whether this guardianship proceeding constituted the least restrictive means available for furthering a governmental interest.

## B. The Magistrate Court Did Not Err When It Took Judicial Notice of a Prior Hearing

Bennett argues the magistrate court erred during the September 11 hearing when it took judicial notice of the June 12 testimony. During the hearing on Bennett's motion to reconsider, Bennett argued that when the magistrate court took judicial notice of testimony from the June 12 hearing, it failed to indicate with specificity which facts the court was taking notice of. According to Bennett, by failing to identify with specificity which testimony or facts were being noticed, the magistrate court violated Idaho Rule of Evidence 201(c).

Bennett did not object to the judicial notice taken by the magistrate court during the September 11 hearing. From the context of the hearing, it appears that off the record, the parties

4

discussed the magistrate court taking judicial notice of the June 12 testimony. On the record, Bennett inquired what the "scope of Courts' [sic] acknowledgment" of the prior testimony would be and whether the court was taking notice of "the testimony, the findings, or both?" The magistrate court stated it was going to take judicial notice of the testimony that was given at the June 12 hearing, but it would not take notice of the court's findings from that day. Bennett did not object to the "scope" or content of the judicial notice. Bennett followed up by asking the magistrate court to take notice of the filings in the guardianship case, and the magistrate court took judicial notice of the entire court file.

Bennett filed a motion to reconsider, wherein she asked the magistrate court to reconsider its September 11 decision to take judicial notice of the testimony from the June 12 hearing. The magistrate court held a hearing on Bennett's motion to reconsider. There, Bennett clarified her position regarding judicial notice and argued the magistrate court erred in the September 11 hearing when it took notice of the testimony from the June 12 hearing without identifying which specific facts were being noticed. Bennett stated:

> Once again, I don't believe I restated on the record, but in chambers I objected to the application of INAUDIBLE to the conclusions arrived at from the June 12th hearing, and in this motion I would reassert that position. And that for purposes of established facts, then that would be the general admission of that testimony, therefore was improper.

After arguments by the parties, the magistrate court ruled that it did not err when it took judicial notice of testimony from the June 12 hearing.

Bennett fails to show how the magistrate court erred or how she was prejudiced when the court took judicial notice of testimony from the June 12 hearing. Idaho Rule of Evidence 201(c) provides:

> (c) Taking Notice. The court:
> > (1) may take judicial notice on its own; or
> > (2) must take judicial notice if a party requests it and the court is supplied with the necessary information
> When a court takes judicial notice of records, exhibits, or transcripts from the court file in the same or a separate case, the court must identify the specific documents or items so noticed. When a party requests judicial notice of records, exhibits, or transcripts from the court file in the same or a separate case, the party must identify the specific items for which judicial notice is requested or offer to the court and serve on all parties copies of those items.

By its plain language, a court may sua sponte take judicial notice of records or transcripts from the court file in the same case, so long as the court identifies the documents or items of which it is

5

taking notice. I.R.E. 201(c). Here, at the September 11 hearing, the magistrate court made clear it was taking judicial notice of the testimony from the June 12 hearing. The magistrate court identified the item--the testimony given at the June 12 hearing for temporary guardianship--with sufficient specificity. Bennett even inquired whether the magistrate court was taking notice of "the testimony, the findings, or both" and the magistrate court clarified it was only taking notice of the testimony but not the findings made by the court on June 12. The magistrate court explained that it had taken copious notes and reserved the same notepad for both the June 12 and September 11 hearing.

The Idaho Supreme Court addressed a similar issue in *Navarro v. Yonkers*, 144 Idaho 882, 173 P.3d 1141 (2007), and held:

> A judge may take judicial notice of personal recollection of prior proceedings to the extent that the judge recalls what occurred. *State v. Nunez*, 138 Idaho 636, 643, 67 P.3d 831, 838 (2003). However, the previous hearing must be transcribed so that any alleged error in such judicial notice is subject to appellate review. *Matthews v. State*, 122 Idaho 801, 808, 839 P.2d 1215, 1222 (1992). Because this Court was provided with a transcript of the July 12 hearing, judicial notice of the magistrate judge's personal recollection of the testimony was proper.

*Navarro*, 144 Idaho at 887, 173 P.3d at 1146. Here, just as in *Navarro*, the magistrate court took judicial notice of the testimony of the June 12 hearing, relied on its notes taken during the hearings, and the transcript of that hearing is provided as part of the appellate record. Although Bennett relies on *Matthews*, we do not read *Matthews* to require additional specificity, nor did the *Navarro* Court. The rule of evidence does not require, as Bennett suggests on appeal, that a court must specifically identify each statement or fact of which the court takes notice. Instead, a court must only identify the item of which it is taking notice and provide an adequate appellate record such that challenges can be made. To adopt a rule as proffered by Bennett would be overly burdensome on trial courts and is not required under the plain language of the Idaho Rules of Evidence. Consequently, the magistrate court did not err when it took judicial notice of the June 12 hearing.

## C. The Magistrate Court Did Not Err Because It Did Not Prohibit Testimony Based on Res Judicata

Bennett argues the magistrate court erred when it applied the doctrine of res judicata to the permanent guardianship determination at the September 11 hearing based on the testimony adduced at the June 12 hearing. However, Bennett fails to support her argument with authority, which results in a waiver of the position on appeal. *See Powell v. Sellers*, 130 Idaho 122, 128, 937 P.2d 434, 440 (Ct. App. 1997). The argument also fails on the merits.

6

The transcript on appeal shows the magistrate court explicitly explained it was not applying res judicata to any of the issues at the September 11 hearing. During the September 11 hearing, the magistrate court stated: "[W]hile there was some discussion in chambers regarding Res Judicata, and while I do believe Res Judicata applies, I will not consider it Res Judicata for todays' [sic] purposes." When the issue again arose at the October 29 hearing, the magistrate court explained:

> Alright, when I reviewed the motion, I was concerned by the number II in the motion that says "the Court's application of Res Judicata, as it relates to the facts testified about at the June 12, 2019 is something that the Court had errored [sic] in doing." And, so I went back and listened to just the opening of the record, and I note that I said on the record . . . . let me back up . . . . my recollection, and it was confirmed by the recording is that we talked in chambers about that in my opinion, Res Judicata applied based on the prior testimony, but that I was not going to hold the parties to a Res Judicata standard. I was going to allow them to present any evidence that was not duplicities [sic]. As Ms. Stern said, anything that was new, I would allow them to present. When I reviewed the recording I indicated that we had talked in chambers about my personal opinion regarding Res Judicata, but that I would not consider the prior testimony as Res Judicata. And I invited the parties to present any testimony that was, and I used the word "duplicitous." [sic]

The magistrate court explained both at the September 11 and October 29 hearing that it did not apply res judicata to the elements required to be established at the September 11 hearing. Furthermore, Bennett does not point to any evidence or element she sought to establish or disprove, questions she wished to ask, or other evidence she was precluded from presenting on the basis of the magistrate court's alleged res judicata ruling. Consequently, Bennett has failed to demonstrate the magistrate court erred in denying her motion to reconsider on this ground.

Bennett also contends that the magistrate court impermissibly shifted the burden of proof. Bennett claims the magistrate court forced her to "convince the trial court that the previous evidence was not sufficient to establish that the Appellant was unable to provide a stable home environment." Conclusory allegations and assertions of fact, without citation to the record below, are not sufficient to support an argument on appeal. I.A.R. 35(a)(6); *Woods v. Sanders*, 150 Idaho 53, 58, 244 P.3d 197, 202 (2010). Not only does Bennett provide no authority to support her position, but she fails to cite to any portion of the record to show that the magistrate court shifted the burden in the case. The magistrate court required the Nicholsons to go forward with the burden of proof at the June 12 temporary guardianship hearing, saying:

> We talked in chambers about procedure, and my thought or question was about burden of proof. I've gone back and forth on this several times, the wording

7

tells me that the hearing must be on the appropriateness of the appointment of the temporary guardian. And because it says the appropriateness of the appointment I am going to require the Petitioners to bear the initial burden.

Similarly, at the September 11 hearing, petitioners were required to present their case first and carry the burden both of production and persuasion as to the reason for appointing guardians and whether it was in T.J.T.-M.'s best interests to appoint guardians. Bennett has not directed this Court to any information in the record that supports her position and, furthermore, the record reflects the opposite. The Nicholsons were the petitioners in this case and had the burden of proof to establish that granting their guardianship petition was in the best interests of T.J.T.-M. That was the standard utilized by the magistrate court and Bennett has not shown error in this regard.

**D.    The Evidence Supports the Judgment of the Magistrate Court**

Bennett argues that a magistrate court's decision to appoint a guardian must be supported by clear and convincing evidence, and here, the evidence does not meet that burden of proof. Additionally, Bennett claims the evidence from the June 12 hearing cannot be considered in the ruling, and thus, the evidence adduced from the September 11 hearing was insufficient to establish the need for a guardian in this case. The Nicholsons respond that the appointment of a guardian need only be established by a preponderance of the evidence and that burden was met.

First, as discussed above, the magistrate court did not err when it took judicial notice of the June 12 hearing testimony. As such, Bennett's argument that this Court can look only to the September 11 testimony fails.

Second, this Court holds that the burden of proof standard for the appointment of a guardian is by a preponderance of the evidence. The standards for appointing a guardian are set forth in I.C. § 15-5-207(4):

> If the court finds, upon hearing, that a qualified person seeks appointment, venue is proper, the required notices have been given, the requirements of section 15-5-204, Idaho Code, have been met, and the welfare and best interests of the minor will be served by the requested appointment, it shall make the appointment. In other cases the court may dismiss the proceedings, or make any other disposition of the matter that will best serve the interest of the minor.

As the Idaho Supreme Court has held, a guardianship is not a termination of parental rights; it is a limitation on parental rights. *Doe*, 157 Idaho at 756, 339 P.3d at 1160. This is because a guardianship is a continuing case until the guardianship is terminated. *Id.* at 754, 339 P.3d at 1158. The guardianship statutes specifically allow for reinstatement of parental rights. Idaho Code §§ 15-5-210 through 15-5-212 deal with subsequent proceedings, and thus, a parent has the power to

8

file an action to have parental rights reinstated and regain physical custody of the children. *See Copenhaver*, 124 Idaho at 891, 865 P.2d at 982.

While no case has articulated the burden of proof for the permanent guardianship of a minor, this Court concludes that the appointment of a guardian must be established by a preponderance of the evidence. A preponderance of the evidence means that the evidence shows something to be probably more true than not. *In re Beyer*, 155 Idaho 40, 45, 304 P.3d 1206, 1211 (Ct. App. 2013); *Ada Cty. Prosecuting Attorney v. DeMint*, 161 Idaho 342, 344, 385 P.3d 897, 899 (Ct. App. 2016). In a guardianship proceeding,

> The court may appoint a guardian for an unmarried minor if all parental rights of custody have been terminated by prior court order or upon a finding that the child has been neglected, abused, abandoned, or whose parents are unable to provide a stable home environment.

I.C. § 15-5-204. The standard to appoint a temporary guardian is a preponderance of the evidence. I.C. § 15-5-207(5)(a).

When appointing the Nicholsons as temporary co-guardians in the case, the magistrate court found by a preponderance of the evidence that Bennett was unable to provide a stable home environment. It then found that granting the temporary guardianship was in the best interests of T.J.T.-M. Bennett does not contest that finding by the magistrate court, and she does not argue for a burden of proof other than a preponderance of the evidence for the appointment of a temporary guardian.

A permanent guardianship is not different in kind than a temporary guardianship. In both a temporary and a permanent guardianship, the parent may petition to terminate the guardianship and be restored to full parental control of the minor child. The standard for appointing a guardian in both a temporary and permanent guardianship is the same, since both are a limitation on--rather than a termination of--parental rights. As such, we see no reason the burden of proof would be different.

Similarly, a guardianship case is also like a case proceeding under the Child Protective Act (CPA). First, the standard for removing the child is similar; in either case there must be a finding that the child has been neglected, abused, abandoned, or whose parents are unable to provide a stable home environment. I.C. § 16-1603(1); I.C. § 15-5-204. Second, in each case, the magistrate court must find by a preponderance of the evidence that the child comes within the court's jurisdiction. *See* I.C. § 16-1619(4); I.C. § 15-5-207(4). Third, the suspension of parental rights is

9

similar; in either case, the parent has the ability to regain full parental control. For example, in a CPA case, if the court gives the Department of Health and Welfare (Department) custody of the child at the adjudicatory hearing, the parent retains all the residual parental rights, and the vesting of custody to the Department is subject to full judicial review by the court and when contested by any party. I.C. § 16-1619(5)(b). And, like in a guardianship case, a parent in a CPA action can move the court to have her full parental rights reinstated, and as an incident thereto, to regain physical custody of her children because the policy underlying the CPA is, for the State, "to the fullest extent possible, seek to preserve, protect, enhance and reunite the family relationship." I.C. § 16-1601; *see also* I.C. § 16-1621(3)(a) and (c).

Bennett argues that a permanent guardianship is essentially a termination of her parental rights, but we disagree. Because a parent has a fundamental liberty interest in maintaining a relationship with his or her child under *Troxel v. Granville*, 530 U.S. 57, 65 (2000), due process requires that the grounds for *terminating* a parent-child relationship be proved by clear and convincing evidence. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). However, appointing a permanent guardian is not a termination of parental rights, but rather a limitation on parental rights. The due process protections are met by the procedures articulated in the statute, not the least of which is the parent's ability to file a motion to remove the guardian and the ability to petition the court to regain full parental control of the minor child. *See Doe v. Doe*, 150 Idaho 432, 247 P.3d 659 (2011); *see also* I.C. § 15-5-210. Because a guardianship is not a termination of parental rights, and the greater due process protections articulated above do not apply, we hold that the standard for appointment of a permanent guardian is a preponderance of the evidence rather than clear and convincing evidence.

Here, Bennett contests the magistrate court's findings regarding her home environment and the best interests of T.J.T.-M. The magistrate court suspended Bennett's parental relationship due to her inability to provide a stable home environment. First, Bennett failed to provide adequate dental care for T.J.T.-M. Second, Bennett married a man who was convicted of criminal charges, which included attempted strangulation. Further, Bennett lied to the guardian ad litem during the pendency of the case about whether anyone with pending criminal charges or convictions was living in Bennett's home. Third, Bennett failed to provide a satisfactory education for T.J.T.-M. While Bennett was the sole guardian, T.J.T.-M. was not expected to graduate kindergarten and on multiple occasions, Bennett failed to engage with school personnel to address T.J.T.-M.'s

10

performance. The magistrate court also discussed Bennett's lifestyle choices; for example, Bennett continued to reside next door to a person who had threatened her and the children with a gun and was, even by Bennett's testimony, volatile.

After finding that Bennett's home life was unstable, the magistrate court addressed what would be in T.J.T.-M.'s best interests and in doing so, looked at how T.J.T.-M. developed during the temporary guardianship. For example, the physical and dental health of T.J.T.-M. improved and his cavities were fixed once temporary co-guardianship was granted. T.J.T.-M. showed dramatic improvement in school--both academically and behaviorally--once the Nicholsons were granted temporary co-guardianship. The Nicholsons offered T.J.T.-M. the stable home environment that was lacking under Bennett's care.

On appeal, Bennett does not contest the evidence which supports the findings of the magistrate court. Rather, Bennett argues the situation was simply not as bad as the magistrate court found. For instance, Bennett claims that although there was evidence of the child's cavities, there was no finding the cavities were severe. Bennett also admits that she married a man with a criminal history, but asserts there was no evidence the man was violent with the child. Finally, Bennett concedes the child's test scores improved after the Nicholsons were awarded temporary co-guardianship, but argues this is not proof that Bennett provided an unstable home environment. In each instance, Bennett does not dispute the evidence itself, but rather, provides a different interpretation of the evidence. By doing so, Bennett fails to show why her interpretation of the evidence is more appropriate than the magistrate court's when the magistrate court was in the best position to listen to the evidence at the hearings and weighed the credibility of the witnesses. Although Bennett disagrees with the magistrate court's interpretation of the evidence, the magistrate court was in the best position to weigh credibility and resolve the dispute. *Desfosses v. Desfosses*, 120 Idaho 354, 357, 815 P.2d 1094, 1097 (Ct. App. 1991). This Court will not substitute its view for that of the trier of fact as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *State v. Flowers*, 131 Idaho 205, 207, 953 P.2d 645, 647 (Ct. App. 1998). Bennett also fails to cite to the record for support, as is required by Idaho Appellate Rule 35(a)(6). *See Woods*, 150 Idaho at 58, 244 P.3d at 202. Thus, the findings and conclusions of the magistrate court are supported by substantial and competent evidence and the magistrate court's decision awarding the Nicholsons co-guardianship is affirmed.

11

**E.     The Magistrate Court Abused Its Discretion When It Awarded Attorney Fees**

Bennett contends it was improper for the magistrate court to award attorney fees and costs in this case. According to Bennett, attorney fees should not have been awarded because Bennett's motion to reconsider and motion for leave to appeal directly to the Supreme Court were not frivolous.

The decision to award attorney fees is discretionary and absent an abuse of that discretion, a trial court's grant or denial of attorney fees will not be disturbed on appeal. *Perez v. Perez*, 134 Idaho 555, 557-58, 6 P.3d 411, 413-14 (Ct. App. 2000). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

While some of Bennett's motions and arguments in this case may have been frivolous, the record is insufficient to determine whether the magistrate court acted consistently with the applicable legal standards and reached its decision to award attorney fees through an exercise of reason. The magistrate court concluded it was awarding fees at the completion of the October hearing on Bennett's motion to reconsider, but there was no explanation as to why. Similarly, the magistrate court's judgment regarding attorney fees and costs not only lacked an explanation as to the ruling, but also struck through and erased the applicable statutory provisions. There is therefore insufficient evidence to show the magistrate court perceived the issue as one of discretion, acted within the bounds of that discretion, was consistent with applicable legal standards, and reached its decision by an exercise of reason. Thus, the magistrate court's decision to award attorney fees and costs is vacated.

## IV.

## CONCLUSION

For the reasons set forth above, we affirm the magistrate court's judgment appoint co-guardianship. However, we vacate the magistrate court's judgment awarding attorney fees and costs.

Judge GRATTON and Judge BRAILSFORD **CONCUR**.